## McGuire *v.* The State.

1. CRIMINAL LAW. *Indictment and presentment.* "*Pros.*" *good for prosecutor.* It is no grounds for an arrest of judgment because the abbreviation of "pros." was marked after the prosecutor's name, instead of "prosecutor," upon the indictment.

2. SAME. *Evidence. Possession presumption of guilt, though it be in another State.* The recent possession of stolen property in another State raises the same presumption of guilt as if the possession was in this State.

### FROM GILES.

Appeal from the Criminal Court. THOMAS M. JONES, Judge.

NOBLE SMITHSON for complainant.

ATTORNEY GENERAL HEISKELL for the State.

McFARLAND, J., delivered the opinion of the court.

The prisoner was convicted of horse-stealing in the Criminal Court of Giles county. His motions for a new trial and in arrest of judgment were overruled, and a judgment rendered sentencing him to twenty-one years in the penitentiary, and from this the prisoner has appealed.

It is first insisted that the court erred in refusing to arrest the judgment because there was no sufficient endorsement of a prosecutor upon the indictment. The indictment has endorsed upon it, in the usual place, the words "Jas. W. Douglass, Pros." James W. Douglass is the person from whom the horses were stolen, and in the bill of exceptions, in which the evidence is set forth, he is styled "James W. Douglass, the prosecutor." It would, perhaps, have been as well to have written the word "prosecutor" in full, but the abbreviation in the place, and in the connection in which it is placed, could have had no other meaning, and we cannot arrest the judgment for a deficit of this character.

Next, it is argued that the court erred in stating to the jury the effect of the rules of evidence in regard to the possession of stolen property.

Giles county, where the horses were stolen, is near the State of Alabama. There is proof tending to show that the horses were seen, recently after they were stolen, in the prisoner's possession in the State of Alabama. The court stated to the jury the familiar rule of evidence upon this subject. For the defendant, it was argued that this possession recently after the stealing would raise no presumption of the

prisoner's guilt, provided his possession of the prop-, erty was in another State. The court below declined to recognize this as a sound distinction. We are aware of, no authority recognizing this distinction, and upon principle we can see no reason for it. It is the fact that the prisoner's possession of the stolen property recently after it was stolen, that raises the presumption of guilt against him. It is wholly immaterial where the State line may be with reference to the place of the theft and the place where the prisoner was seen. There can be no reason for the distinction.

It is next argued that the judgment should be reversed because the evidence preponderates against the verdict.

The evidence for the State makes out a strong case against the prisoner. He was seen by two witnesses early in the morning after the horses were stolen, with them in his possession, going in the direction of Huntsville, Alabama, from the direction of the prosecutor's residence in Giles county. The witnesses knew the horses, and although they did not then know the prisoner, they afterwards identified him very clearly. A few days later, the prisoner had one of the animals in his possession, at or near Huntsville, Alabama, claiming it as his property, and both animals were found there. This positive testimony is strongly corroborated by the circumstances, which we need not recapitulate.

The question is, Has the effect of this evidence been seriously weakened by the defendant's proof of

an alibi? Quite a number of witnesses prove the prisoner to have been at Huntsville, Alabama, at the time they understood he was charged with the theft in Giles county; some go. further, and prove. that he was not absent from the vicinity of Huntsville for the entire week; but their evidence does not carry very great weight. A number of witnesses are more specific, and prove that he was in Huntsville the day and night they were informed he was charged with the stealing, that is, Thursday, the 18th of January. They drank punch with him at Bailey's grocery. Bailey says he came there as early as four o'clock in the afternoon, and other witnesses fix later hours, and he was proved to have staid at a certain house that night. But the evidence shows that the horses were, in fact, stolen on Wednesday night, the 17th of January, or at least they were missed on the morning of the 18th, and pursuit then commenced. It was sunrise the same morning that the two witnesses, William and Argyle Wells, met the prisoner with the horses going in the direction of Huntsville. One of the witnesses says it was Friday, the 18th; they both say it was the 18th; it was evidently soon after the horses were stolen, and was on Thursday, the 18th. The distance from where the horses were stolen to Huntsville was between forty and fifty miles, and it was not impossible, or even improbable, that the prisoner should have stolen the horses in Giles county on the night of the 17th, and by riding briskly, as the witnesses Wells prove he seemed to be, he probably would reach Huntsville early in the day on

Thursday, the 18th.   That he drank punch at Bailey's grocery that night, is not inconsistent with his guilt.   The theory of the alibi erroneously assumes that the horses were stolen on the night of Thursday, the 18th, when in fact they were stolen on the night previous.   The charge was very clear and favorable to the prisoner.

Without discussing the facts more fully, it is sufficient to say, that we are satisfied with the verdict and the judgment will be affirmed.