**UNITED STATES of America,
Appellee,**

v.

**Donald Lee WILLIAMS, Appellant.**

**No. 12493.**

United States Court of Appeals
Fourth Circuit.

Argued Oct. 11, 1968.

Decided Nov. 20, 1968.

Bruce G. Campbell (Court-appointed counsel) for appellant.

C. P. Montgomery, Jr., Asst. U. S. Atty. (C. V. Spratley, Jr., U. S. Atty., on brief) for appellee.

Before SOBELOFF, WINTER and CRAVEN, Circuit Judges.

SOBELOFF, Circuit Judge:

After waiving a jury trial, the appellant, Donald Lee Williams, was convicted in the District Court of larceny from the person, committed on United States property in violation of 18 U.S.C. § 661. He appeals on two grounds. First, he complains of the trial court's reliance on the inference, traditionally regarded as permissible, that one found in unexplained possession of recently stolen property may be considered to have stolen it. Second, he challenges the suf-

ficiency of the evidence to support his conviction.

A policeman noticed Williams loitering about Washington National Airport and, after observing him from time to time for about an hour, followed him into a rest room. There the officer saw Williams throw a wallet into a trash can. When he confronted Williams with the wallet, the latter replied that "he had never seen it before; he knew nothing about it." On investigation, the wallet was found to belong to a Mrs. Goodman who was waiting in the airport for a connecting flight. She had had the wallet with her at the Newport News airport and had her handbag on her arm during her entire wait at the Washington airport.

Mrs. Goodman was not aware of the theft until informed by the police that they had her wallet. At trial, she testified that a Negro man had approached her and spoken to her while she was waiting for her plane, but she could not identify Williams, a Negro, as the man. She also testified that her wallet had contained something over forty dollars. She stated the denominations—a twenty dollar bill, two tens, and three ones. Williams, when arrested, was found to have a twenty, two tens and ten ones.

The defendant did not testify at the trial. In convicting him on the above evidence, the court declared that it was relying, in part at least, on the immemorially established rule permitting an inference that one in unexplained possession of recently stolen property is the thief.

## I

▇ Appellant claims that, in taking this rule into consideration, the District Court violated his Fifth Amendment privilege against self-incrimination. The argument advanced is that the rule has been made unconstitutional by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The reasoning is rather intricate. At trial no objection was interposed to the police officer's testimony that in response to an inquiry the defendant disclaimed all knowledge of the wallet. Nor did the appellant in his brief or argument question the admissibility of this statement. However, he indirectly attacks the admission of the testimony by claiming that Miranda bars the trier of fact from relying on an inference arising from a defendant's failure to explain possession of stolen property. Although the appellant contends that it is "consideration of that presumption [inference]" which violates Miranda, it is clear that his objection is not directed at the Judge's purely mental process in drawing an inference from undisputed testimony. Instead, his specific Miranda argument, that "a person is no longer under a legal duty to speak after being placed under police custodial interrogation," is aimed at the content of the officer's testimony. Therefore, if the officer's testimony concerning Williams' failure to explain possession of the wallet is not made inadmissible by Miranda, the appellant's attack on the inference drawn from that testimony must fail.

The appellant bases his attack on the teaching of Miranda that no adverse inference may be drawn from a defendant's silence—indeed, no mention of his answer or refusal to answer is admissible— "after [he] has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444, 468, 86 S.Ct. at 1612, 1624 n. 37. On analysis, therefore, his argument rests on the assumption that he was in custody when first questioned in the washroom. However, the police officer's simple question in the circumstances cannot be equated with the kind of "custodial interrogation" to which Miranda applies.

The Fifth Amendment guarantees every person the right not to be "compelled" to incriminate himself. The Miranda decision dealt with the protection of that right in a police-dominated atmosphere. The Court established special rules to protect suspects "in custody," because of the secrecy and in-

timidation which the very word "custody" connotes.

The potentiality for intimidation of suspects in custody was the Court's primary concern. Throughout the opinion, the Court spoke of "menacing police interrogation procedures" and an "interrogation environment * * * created for no purpose other than to subjugate the individual to the will of his examiner." 384 U.S. at 457, 86 S.Ct. at 1619. The opinion presented a detailed account of the techniques set forth in police manuals for obtaining confessions from uncooperative suspects. The suspect, "cut off from the outside world," may face one or several determined policemen who "persuade, trick, or cajole him out of exercising his constitutional rights." Id. at 455, 86 S.Ct. at 1617. Police control of the physical surroundings is crucial in the interrogation procedure the Court had in mind. "In other settings, these individuals might have exercised their constitutional rights. In the incommunicado police-dominated atmosphere, they succumbed." Id. at 456, 86 S.Ct. at 1618.

It was to offset this intimidating feature of custody that the Court fashioned the procedural requirements of *Miranda*, at the same time denying any intent to "hamper the traditional function of police officers in investigating crime." The Court was careful to state that "[g]eneral on-the-scene questioning as to facts surrounding a crime * * * is not affected by our holding." 384 U.S. at 477, 86 S.Ct. at 1629.

With the Court's concept of custody before us, we find in our record no suggestion of the kind of secrecy and intimidation described in the *Miranda* opinion. Clearly the police officer's actions here were minimal and must be characterized as merely investigatory.[1] The officer was eye witness to an extraordinary event—a man casting away a wallet. Quite properly he inquired about it. Few would disagree that if he had done less in the circumstances he would have been remiss in his duty. As Williams' answer, which denied all knowledge, was belied by the officer's own senses, he naturally inferred that the appellant's possession of the wallet may not have been innocent. The prosecutor breached no rule of evidence in offering the officer's testimony, nor did the trier of the facts violate the appellant's rights when he, in turn, inferred guilt, as any rational mind well might, from this and the further testimony of Mrs. Goodman, which completed the story of the crime. The protections established by *Miranda* must be liberally extended to all who come within the scope of the decision, but the Supreme Court made plain its intent to leave uncoercive police field investigations of this type unhampered.[2]

---

1. In a case involving facts not too dissimilar, Allen v. United States, 390 F.2d 476, 479 (D.C.Cir. 1968), Judge Leventhal said:

> The courts must look to the essence of the situation and it seems to us clear that the essence here was not an officer staging an interrogation * * * but an officer reacting to a street scene and trying to run down the facts.

In *Allen*, the police officer stopped a car which was being driven at night without headlights. As he asked the driver for his license, the officer saw a badly beaten and bleeding man slumped on the back seat. The officer asked the injured man if he had been beaten and, if so, by whom. The man pointed to the driver. The officer then asked the driver if he had beaten the man, and the driver admitted that he had. Testimony at trial concerning the driver's admission was challenged under *Miranda;* the Court of Appeals held its admission proper since the driver was not in custody when questioned.

2. Lower federal courts and state courts alike have refused to extend *Miranda* to situations in which the police are either investigating suspicious circumstances or carrying out general on-the-scene questioning after the commission of a specific crime. E. g., Allen v. United States, 390 F.2d 476 (D.C.Cir. 1968); Arnold v. United States, 382 F.2d 4 (9th Cir. 1967); Wakaksan v. United States, 367 F.2d 639 (8th Cir. 1966) ; United States v. Kuntz, 265 F.Supp. 543 (N.D.N.Y.1967); People v. P. (anon.), 21 N.Y.2d 1, 286 N.Y.S.2d 225, 233 N.E.2d 255 (1967).

## II

The appellant presents yet another closely related version of his Fifth Amendment claim. It runs as follows—he claims that since a defendant in a criminal trial has an absolute right not to testify, his failure at trial to explain possession of the property cannot be relied on to support an inference of guilt. Williams thus apparently considers the inference arising from unexplained possession of stolen property to be an unconstitutional burden on the exercise of his right not to testify.

If the challenged inference could fairly be regarded as a comment by the prosecution on Williams' failure to testify it would indeed be invalid. Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). The Supreme Court and lower federal courts, however, have construed the inference as one arising from "the absence of explanatory evidence" of any kind. Dunlop v. United States, 165 U.S. 486, 502–503, 17 S.Ct. 375, 41 L.Ed. 799 (1897); United States v. Luciano, 343 F.2d 172, 174 (4th Cir. 1965). The inference is derived from the weight of the evidence and not from the defendant's failure to take the stand. Evidence which leaves unexplained the possession of recently stolen property may give rise to an inference of guilt. The trier of fact may accept or reject the inference, which does not affect the presumption of innocence or alter in any way the prosecution's burden of proof. It represents nothing more than a rational conclusion based on circumstantial evidence, and this is not forbidden by common sense or the Constitution.[3]

3. Courts have consistently upheld as permissible similar inferences arising from unexplained behavior. United States v. Gainey, 380 U.S. 63, 85 S.Ct. 754, 13 L. Ed.2d 658 (1965); Yee Hem v. United States, 268 U.S. 178 (1925); Thomas v.

## III

The appellant's final contention is that there was not sufficient evidence to support his conviction of the particular offense of larceny "from the person of another." 18 U.S.C. § 661. He contends that even if his unexplained possession of the wallet permits an inference that he stole it, possession alone cannot justify the further inference that he stole it from the person of Mrs. Goodman.

On appeal, evidence is sufficient to sustain a guilty verdict if, construed most favorably to the prosecution, the evidence furnished the trial court a sufficient basis to find the defendant guilty beyond a reasonable doubt. United States v. Mancuso, 378 F.2d 612 (1967).

Here, Mrs. Goodman testified that she placed the wallet in her handbag after purchasing insurance at the Newport News airport. She further testified that she did not use the wallet again and kept the handbag on her arm during her entire wait at the Washington airport. The handbag was hanging on her left arm when the Negro man approached her on the left and spoke to her. Williams' possession of the wallet and the manner of his attempt to dispose of it warranted not only an inference that he knew it was stolen but also that he participated in the theft. A rational mind could conclude beyond a reasonable doubt that the theft was perpetrated by removing the wallet from the handbag on Mrs. Goodman's arm.

The conviction is affirmed.

The appellant's motion for bail was heard simultaneously with the argument of the appeal from his conviction. Since we affirm the conviction, the motion for bail is denied.

United States, 372 F.2d 252 (5th Cir. 1967); United States v. Armone, 363 F. 2d 385 (2 Cir. 1966); Orozco Vasquez v. United States, 344 F.2d 827 (9th Cir. 1965).