BENNY HAROLD SMITH and DORIS SHIPLEY,
Plaintiffs in Error, v. STATE OF TENNESSEE,
Defendant in Error.

451 S.W.2d 716.

Court of Criminal Appeals of Tennessee. Dec. 10, 1969.

Certiorari Denied by Supreme Court March 2, 1970.

118

Conrad Finnell, Cleveland, for plaintiffs in error.

George F. McCanless, Atty. Gen., and Lance D. Evans, Asst. Atty. Gen., Nashville, Tom J. Taylor, Dist. Atty. Gen., Athens, for defendant in error,

## OPINION

WALKER, Presiding Judge.

The defendants below, Benny Harold Smith and Doris

Shipley, were convicted of grand larceny in McMinn County and sentenced to three years in the penitentiary.

Their first assignment of error questions the sufficiency of the evidence to sustain their convictions.

During the night of December 17, 1967, Minnie Lou Hunter's dress shop in Calhoun, McMinn County, was broken into and women's clothing valued at $2,653.12 was stolen. The burglary was discovered and investigated the following morning.

On January 2, 1968, city officers searched the house in Chattanooga, where the defendants were living together. They found thirty dresses of various sizes labeled "Bobby Brooks" on hangers and also 22 sweaters. Mrs. Hunter identified several of the garments by her price tag and identified others as of the style and brand taken from her store. All of the stolen property was not found.

Both defendants were arrested and warned of their constitutional rights. Smith made no statement, but Mrs. Shipley told the officers at her house that the dresses were given to her over a period of time and that she had bought some of them. She did not mention the name of Sam Hood. Her explanation at the scene was to the effect that her possession was not recent.

At their trial Smith did not testify. Mrs. Shipley testified that a man she knew as Sammy came by her house a week or two before Christmas and delivered some clothes to Smith, for which Smith paid $50 the next day and $25 later; that she loaned him $15 or $20 of the money to pay Sammy, who is also called Sam Hood by the defendants. Hood was shot and killed about two months before the trial. Mrs. Shipley said that Smith gave her the

dresses and sweaters for her daughter and herself. One Wayne Johnson testified that Hood had some women's clothing in his car trunk a week or two before Christmas which Hood had offered to sell him.

Mrs. Shipley and Johnson were evasive and indefinite about the time when they had seen Hood. It is obvious that the jury did not believe their testimony that the deceased Hood had sold the clothing to Smith.

■ ■ In this state we follow the generally approved rule that the unexplained possession of recently stolen goods may warrant an inference that the possessor has stolen them. See Tackett v. State, Tenn., 443 S.W.2d 450; Peek v. State, 213 Tenn. 323, 375 S.W.2d 863; Hughes v. State, 27 Tenn. 75. When the proof shows a defendant's possession to have been a guilty possession, slight circumstances may authorize a jury to determine whether he has been guilty of the theft or of receiving stolen property, knowing it to have been stolen. See Cook v. State, 84 Tenn. 461, 1 S.W. 254.

The defendants contend that they gave a reasonable explanation of their possession of the recently stolen clothing, that their explanation was not disputed by the State's evidence and therefore the inference which otherwise would be permissible is not permissible in this case; and for that reason the evidence does not sustain a finding of guilty of larceny.

■ ■ The "unexplained" in the inference of guilt from the unexplained recent exclusive possession of stolen property does not mean that the defendants' explanation must be believed. "Unexplained" does not

mean "no reasonable explanation given." The Supreme Court of Missouri recently considered this question in State v. Clark, Mo., 438 S.W.2d 277 (1969). It held that if the trier of fact does not believe the explanation of the defendant, the possession is unexplained. If the defendants' contention is the law, the rule under discussion would be useless. In almost every such case, some explanation is offered by the accused. Here the jury rejected as unreasonable and incredible the defendants' explanation that the deceased Sam Hood sold Smith the clothes. See also Taylor v. State, 118 Ga.App. 605, 164 S.E.2d 876 (1968); United States v. Williams (4th Circuit), 405 F.2d 14 (1968).

■ ■ Under the same assignment, the defendants contend there is no proof of venue. There is no direct proof that they were in McMinn County. The inference that may be raised by unexplained possession of recently stolen goods is not limited to the territorial jurisdiction where an accused is found in possession of the stolen goods. This possession may warrant an inference of guilt at the place where the crime was actually committed. See Williams v. Commonwealth, 188 Va. 583, 50 S.E.2d 407. Venue may be proved by circumstantial evidence.

■ In considering and passing upon the assignments on the weight of the evidence, this court is bound by the rule that a conviction in a criminal case will not be reversed on the facts unless it is shown by the defendant the evidence preponderates against the verdict and in favor of his innocence. Schweizer v. State, 217 Tenn. 569, 399 S.W.2d 743; Black v. State, Tenn. Crim. App., 443 S.W.2d 523.

■ The defendants assign as error the argument of the district attorney general. We have carefully examined the argument to which objection was made and we find no abuse of discretion in the trial judge's control of the arguments of counsel. See White v. State, 210 Tenn. 78, 356 S.W.2d 411. We think these remarks were not prejudicial.

The defendants submitted a single special request, including in it a charge on venue and on the difference between larceny and receiving and concealing stolen property.

■ The general charge thoroughly covers the question of venue and an additional instruction was unnecessary. The defendants were not on trial and could not have been tried in McMinn County for receiving and concealing stolen property. This contention is without merit.

All assignments are overruled and the judgment of the lower court is affirmed.

This case was heard and submitted to the Court prior to the enactment of Chapter 330 of the Public Acts of 1969 increasing the membership of the Court.

OLIVER, J., concurs.

GALBREATH, Judge (dissenting).

I must respectfully dissent from the majority opinion affirming these convictions for grand larceny.

A serious question is raised in connection with the seizure of the clothing used as evidence from the defendant Shipley's home in which the defendant Smith,

her fiance, also lived, at a time when officers of the Chattanooga Police Department were on the premises with a valid search warrant for separate and unrelated property. To me, the plain error committed in allowing the seized property to be used as evidence was such a basic constitutional violation of the defendants' rights that we should reverse a conviction resting on same.

From the state of the record before us, there is no explanation as to why the officers seized the property, a number of articles of ladies clothing, including only two dresses identified as having been stolen during a break-in of Hunter's Dress Shop in McMinn County. It would seem that the confiscation could only be justified as incident to a lawful arrest since the search warrant did not authorize the seizure of dresses. Under the Fourth Amendment to the United States Constitution, it is not permissible to seize property under a warrant describing other property. See Marron v. United States, 48 S.Ct. 74, 275 U.S. 192, 72 L.Ed. 231; Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040. In the absence of any showing that the officers had information causing them to believe the defendants had any connection with the break-in, there appears to have been no clear cause for an arrest. Granted that officers were lawfully on the premises and had the right and duty to arrest anyone present whom they had reason to suspect had committed a felony and to conduct such limited search as is allowable incident to such arrest, nothing at all appears in this record to indicate that the officers had any reason to believe the crime of larceny had been committed at the time they searched, found and confiscated the clothing. The officer who executed the search warrant stated positively, "It was for narcotics," and ex-

plained he had no information "with regards to any dresses or clothes of any type."

The search warrant in this case being only the instrument through which entry was lawfully made no search outside its scope was authorized except as incident to a lawful arrest and the right to search them is strictly limited.

"Application of sound Fourth Amendment principles to the facts of this case produces a clear result. The search here went far beyond the petitioner's person and the area from within which he might have obtained either a weapon or something that could have been used as evidence against him.* There was no constitutional justification, in the absence of a search warrant, for extending the search beyond that area. The scope of the search was, therefore, 'unreasonable' under the Fourth and Fourteenth Amendments and the petitioner's conviction cannot stand." Chimel v. Cal., 395 U.S. 752, 89 S.Ct. 2034, 23 L.E.2d 685.

Just as compelling, it seems to me, these convictions should be reversed for a second reason. The evidence is undisputed. During the night of December 17, 1967, an unidentified person, or persons, broke into Hunter's Dress Shop in Calhoun and stole an assortment of dresses, sweaters, pants, scuffs and blouses valued at more than Twenty-Six Hundred Dollars. On the evening of January 2, 1968, Police Detective Pat Rowe and six other officers searched the Chattanooga home of the defendants under the authority of the aforementioned warrant for narcotics and among some thirty dresses and twenty-two sweaters found in the home two of the dresses

---

*For prosecution on a narcotics law violation in this case.

were identified as being part of the property stolen from the Calhoun dress shop. None of the other property, such as pants, shoes or blouses were found. The defendant Shipley told the officers that the clothing had been given her and when she took the stand in her defense explained that her boy-friend, the co-defendant, had purchased the clothing from a man named Sam Hood for her use and that of her daughter and presented them as gifts. Mrs. Shipley's testimony was corroborated somewhat by one Wayne Johnson, an acquaintance of her boyfriend, who testified that the Sam Hood mentioned by her had offered to sell him some clothing consisting of a number of dresses, slacks, shoes that were concealed in the trunk of Hood's car. It was brought out on cross-examination of this witness that the defendant, Benny Smith, had told him of the purchase of the clothing from Hood who died shortly before the trial. No proof was offered that either defendant had ever been in McMinn County.

Both Mrs. Shipley and the witness Johnson were of the opinion the clothing was offered for sale by the deceased Sam Hood "a week or two" or a "week or so" before Christmas. The State in its brief appears to rely almost entirely on this vagueness in the exact date of the alleged possession of the described clothing by Hood as refutation of the explanation offered by Mrs. Shipley as to how she came into possession of the two dresses. A week before Christmas would have been on the 18th day of December, the day after the burglary. This would seem to be an opportune time for a thief to rid himself of property stolen the night before. Of course, the property could not have been in possession of either Hood or the defendants two weeks prior to Christmas, but it is not

an unusual experience for the memory as to exact time to become somewhat faulty. Particularly is this true during the Holiday Season when children are out of school and work schedules are not as exact as throughout most of the year. The trial of this cause was some six months after the commission of the crime and it would have been most unusual for witnesses to have recalled the exact date of particular occurrences the past December if they had not made a notation to remind themselves.

Counsel for all parties state in their briefs that they have reviewed the numerous holdings by our Supreme Court on the effect of finding a defendant in possession of recently stolen property and both sides agree that a general rule to be adduced from these cases is:

"If the defendant offers a reasonable explanation for his possession by evidence not contradicted by the State, and if there is no other incriminating evidence offered by the State, then mere possession is insufficient to rebut the presumption of innocence."

Among the cases relied on by the State and the defendants for their consensus opinion as to the above stated rule are: Tyner v. State, 24 Tenn. 383; Carey v. State, 26 Tenn. 499; Hughes v. State, 27 Tenn. 75; Curtis v. State, 46 Tenn. 9; McGuire v. State, 65 Tenn. 621; Poe v. State, 78 Tenn. 673; Cook v. State, 84 Tenn. 461, 1 S.W. 254; Peek v. State, 213 Tenn. 323, 375 S.W.2d 863; Liakas v. State, 199 Tenn. 549, 288 S.W.2d 430; and Shaw v. State, 1 Shan.Cas., 77, in which the following comment is noted on the presumption, or more properly the inference of guilt, occasioned by possession of recently stolen property:

"If it be recent, it is conclusive, unexplained; if remote, additional circumstances of suspicion, arising out of the prisoner's language or conduct, before or after the larceny, his false account of it, or his proximity to the time and place of taking, are necessary to raise the presumption of guilt; that is, in the one case it is not sufficient per se, and in the other it is, when unexplained."

The crux of this rule has been expressed in other ways:

"When a party who is found in possession of goods recently stolen directly gives a reasonable and credible account of how he came into such possession, or such an account as will raise a reasonable doubt in the minds of the jury, then it becomes the duty of the State to prove that such account is untrue; otherwise he should be acquitted." Collier v. State, 55 Fla. 7, 45 So. 752.

"It is not requisite that the accused should prove that his possession was honest. It is sufficient to acquit him if he gives a natural, reasonable and probable explanation of how he acquired possession, which the prosecutor does not show to be false." Underhill's Criminal Evidence, 5th Ed. 601.

In both of the last authorities it is held that the jury has the right to disregard an explanation that is so palpably unreasonable, incredible, or absurd as to be completely unbelievable. Mrs. Shipley's explanation was not unreasonable.

Of course, whether an explanation is reasonable and probable is essentially a question for the jury to determine but where a presumption or inference alone is

relied upon for conviction, and it is rebutted by evidence that is not patently false and such proof is in turn unrebutted, it would seem to me that the presumption or inference should disappear. It has long been settled law in Tennessee, and elsewhere, that a presumption is:

"A rule of law, fixed and relatively definite in its scope and effect, which attaches to certain evidentiary facts and is productive of specific procedural consequences respecting the duty of proceeding with the evidence. According to this view, where the opponent offers evidence contrary to a presumption, the presumption disappears, and the case stands upon the facts and whatever inference may be drawn therefrom." Bell Cab & U-Drive It Co. v. Sloan, 193 Tenn. 352, 246 S.W.2d 41.

Then, too, the law as correctly charged by the court on circumstantial evidence will not support the defendants' convictions unless "the facts are such as to be inconsistent with any other rational conclusion than that they are the guilty perpetrators of the crime imputed to them." Of course, the possession of stolen goods in and of itself is not a fact that is inconsistent with innocence. Many honest persons, pawn brokers, investigating police officers, and private citizens, come into possession of stolen property in either the course of business or as innocent purchasers or finders. The burden of proof, once an explanation of possession which is on its face credible is offered by the one in possession, must be on the State to establish guilt; otherwise, the presumption of innocence which remains with a defendant throughout the trial would be of little benefit. For as pointed out recently by our Supreme Court in a case in

which a conviction was based on an instruction that possession of pistols found in the defendant's car raised a presumption that he carried them for the purpose of being armed:

"As to presumptions, it is settled law that while they may be indulged in criminal cases, this cannot be done to deprive the defendant of the presumption of innocence as was done in this case." Liming v. State, 220 Tenn. 371, 417 S.W.2d 769.

There being no dispute in the proof and no proof of guilt other than the rebutted presumption, it seems clear to me that the verdict of the jury was not supported by the evidence. For this reason I would reverse.