CHARLES RELEFORD WYATT, Plaintiff in Error,
v. STATE OF TENNESSEE, Defendant in Error.
—467 S.W.2d 811.

January 19, 1971.

Certiorari Denied by Supreme Court May 3, 1971.

2

Sam L. Anderson, Hot Springs, Ark., and Wilbur C. Ruleman, Jr., Memphis, for plaintiff in error.

David M. Pack, Attorney General, Thomas E. Fox, Deputy Attorney General, Nashville, Phil M. Canale, Jr., District Attorney General, John Pierotti and Billy F. Gray, Assistant District Attorneys General, Memphis, for defendant in error.

MITCHELL, J.   Charles Releford Wyatt was indicted by the Grand Jury, Shelby County, Tennessee, August 11, 1967, on an indictment charging in the first count burglary in the first degree of the mansion house of Sterling McLemore in March 1967, and in the second and third counts with grand larceny of $125.00 and receiving and concealing stolen money belonging to Sterling McLemore.

The parties will be referred to as defendant and state as they were in the Trial Court.

The defendant, represented by retained counsel, was tried on April 20 and 21, 1970 and found guilty of burglary in the first degree as charged in the first count of the indictment. The jury fixed his punishment at not more than seven (7) years in the State Penitentiary, upon which the Trial Judge, Honorable Arthur C. Faquin, Jr., pronounced judgment and sentence that the defendant be confined at hard labor in the State Penitentiary for a period of not less than five nor more than (7) years and that he be rendered infamous.

After the motion for a new trial had been heard and overruled the defendant appealed to this court and assigned errors.

Sterling McLemore, 408 McCain, North Little Rock, Arkansas, a traveling salesman, was on March 9, 1967, a paying guest at the Holiday Inn Rivermont, in Memphis, Tennessee. He had rented room 805 and was occupying it. When he awakened the next morning he discovered his card folder type billfold and money had disappeared. He had laid his billfold on top of the money on the dresser. He had approximately $125.00 in money which disappeared. In his billfold he had Texaco, Esso, Gulf, Sears-Roebuck, telephone credit cards, and an Air Travel Card and Arkansas Drivers License. The next morning these were all gone. The rooms were carpeted, he did not hear anyone enter his room, there were no signs of forcible entry. He had gone to bed about 11:00 P.M. March 9th and failed to put his night latch on.

After he found his property was missing, he called the hotel manager and they called the police who came and

investigated the matter and took a statement from the prosecutor. He did not know the defendant and he had not given anyone permission to take his property or to use his credit cards. He did not know who took his property.

Miss Mikele Aydelotte, who has since married, was on March 18, 1967 a police investigator with the Miami, Florida Police Department. She had a part-time job in the Security Department of Sears-Roebuck. She testified that she was on her regular shift at the store, when she received information that someone was using a stolen credit card and that the man was trying to get out of the store. The defendant, whom she identified in the courtroom, was running and six or seven people were running after him. They chased the defendant for about two blocks, all the while keeping him in sight, circling and backtracking, caught up with him, and she told him he was under arrest. During the chase the defendant threw down some items which turned out to be Mr. McLemore's credit cards, Arkansas Drivers License and a duplicate receipt, which she recovered and made Xerox copies of them. She exhibited the customer's part of the receipt which is given the customer when he charges a purchase made by the use of a credit card. She also exhibited a Howard Johnson receipt charged to Sterling McLemore. After his arrest the defendant was warned of his constitutional rights but he made no statement. He gave her the key to his car and pointed it out to her. It was a 1961 Oldsmobile, it had a lost or stolen Missouri tag, HM 7185.

The witness said she had the entire six page police report there somewhere. Defendant's counsel insisted he

was entitled to see the entire report but the Court held he was entitled to see only the page from which the witness read.

The witness has married since the offense was committed and is now Mrs. Mikele Carter. She testified in rebuttal that the defendant when he was arrested told her he was a locksmith.

Mary Sue Thompson testified she lived at 806 Parkrose, Shelby County, and was formerly employed at the Quality Courts in Memphis March 9, 1967, on the shift 3:00 to 11:00 at night. That they had a guest who registered by the name of Arthur Addison on March 9, she exhibited the registration card. He put "GE" on the card for employer. He also gave his license number as Missouri HM 7185 on his Oldsmobile. The witness identified the defendant in the courtroom as the guest who registered by the name of Arthur Addison on March 9, 1967.

The defendant testified and denied his guilt, he said he was not in Memphis in February or March, and that he did not enter McLemore's room at the Rivermont nor steal any credit cards in Memphis, the night of March 9 or morning of the 10th, 1967.

The defendant testified that he had been looking for a job in St. Louis and was at his home in DeSoto, Missouri, and that he was in possession of a 1961 Oldsmobile Station Wagon with a California license plate on it. That a guy he had met when he lived in Mississippi, whom he knew as Billy Teel called him on the phone to come to St. Louis and get him, which he did, and that he then loaned his car to Billy Teel for a week and agreed to meet him

in Atlanta and go to Miami looking for a job. That they met in Atlanta and Teel drove them to Orlando. That he did not notice the Missouri license plate on the car until the next morning when he was putting the suitcase in the car.

That Billy Teel gave him the Sterling McLemore credit cards which he admitted using at the Howard Johnson Motor Inn on the 17th day of March 1967. That he also used McLemore's credit cards to make purchases in Miami, and at Sears-Roebuck.

That he had been led to believe it was permissible to use the credit cards, and he did not know they were stolen. Mr. Teel said he had bought the credit cards for $15.00.

He denied that he was registered in the Quality Motel in Memphis and stated he had never registered as Arthur Addison.

The defendant did not introduce any other witnesses in his behalf.

The two assignments of error made on behalf of the defendant are:

1. The court erred in not permitting defense counsel to read the entire police report in connection with this case rather than the one page used by a police officer from the State of Florida who testified as a witness for the State in refreshing her memory.

2. The evidence indicated the place burglarized was a hotel room rather than the dwelling place of the prosecutor.

With references to assignment number 1, in Leach v. State, 220 Tenn. 526, 420 S.W.2d 641, the Court had the same question before it and disposed of it in the following language:

"It clearly appears on this record that defendant was not, in fact, deprived of an examination of the specific memoranda which he now insists were held from him. All that the trial judge did in the instant case was to deny defendant's counsel examination and introduction of an entire investigation file, the great bulk of which had neither been referred nor alluded to by the witness."

In the case at bar, it was clear that the trial judge allowed counsel to examine the page or sheet which was used by the witness to refresh her recollection, but refused to allow counsel to examine the balance of the police report in her possession and to which she had not referred other than to say she had the complete file or report in her possession.

Clearly the trial court was correct in his ruling and no error was committed.

By assignment of error number 2, the defendant contends that the hotel room 805 of Holiday Inn Rivermont which the prosecutor Sterling McLemore had rented and was occupying at the time the burglary and larceny were committed was not the dwelling of the prosecutor therefore the offense was burglary in the third degree. With this we cannot agree.

On the subject of burglary and a dwelling Anderson's Law Dictionary says it must be a habitation of man usually occupied by some person lodging in it at night. Burglary or nocturnal housebreaking has always been looked upon as a very heinous offense; not only because of the terror that it naturally carries with it but also as it is a forcible invasion and disturbance of the right of habitation.

■ A single room may be such a habitation, the injured owner being he who has the right of possession.

Ballentine's College Law Dictionary, page 273, says:

"dwelling-house. The apartment, hotel room, building, or cluster of buildings in which a man with his family resides; any permanent building in which a person may dwell and lie. Statutes have extended the term in many states to include almost every form of structure. See 9 Am.Jur. 251."

In 13 Am.Jur.Burglary, page 321, 322 is the following:

"A dwelling house has been variously defined as the apartment, room in a hotel, building, or cluster of buildings in which a man with his family resides, or any permanent building in which a party may dwell and lie."

About as clear a statement on this subject as can be found is from 12 C.J.S. Burglary sec. 22, page 681.

"Hotels and boarding houses, and houses in which rooms are let to lodgers, are undoubtedly dwelling

houses, so as to make it burglary to break and enter an outer door with felonious intent, or to enter an open outer door, and to break and enter an inner door with such intent, and the fact that a hotel or boarding house is a public place does not prevent its being burglarized by one who enters for the purpose of stealing.''

■ We hold that a hotel room under the facts and circumstances of this case is a dwelling house and that the breaking and entering the hotel room of another by night with intent to commit larceny, is burglary in the first degree.

In the defendant's motion for a new trial he has challenged the weight, sufficiency and legality of the evidence and we think it is appropriate here to consider these grounds although he has made no assignment of error on them.

There can be no doubt that the hotel room of the prosecutor in Memphis was burglarized and his money, credit cards and drivers license were stolen on the night of March 9-10, 1967. Eight days later the defendant was found in Miami, Florida in the possession of the prosecutor's stolen property, and admittedly was using the stolen credit cards in buying merchandise in a store, and in paying for accommodations at Howard Johnson's Inn. His explanation is unsatisfactory.

In upholding a burglary conviction, this Court said in Pruitt v. State, 3 Tenn.Cr.App. 256, 460 S.W.2d 385, 392, in an opinion by Judge W. Wayne Oliver, (filed 7-27-70, certiorari denied 11-2-70):

"In 2 Wharton's Criminal Law and Procedure, sec. 411, pp. 31-33, the rule regarding possession of goods stolen in a recent burglary is stated as follows:

"While the possession of recently stolen goods gives rise to an inference that the possessor has stolen the goods, it is not ordinarily proof or prima facie evidence of burglary. There should be some evidence of guilty conduct besides the bare possession of the stolen property, before the presumption of burglary is superadded to that of the larceny. However, such possession is evidence which may be considered with all the other circumstances of the case as bearing on the question whether the defendant committed the burglary, and there is authority that if the possession is unexplained it may support the conclusion of guilt of burglary. Moreover, when goods have been feloniously taken by means of a burglary, and they are immediately or soon after found in the actual and exclusive possession of a person who gives a false account, or refuses to give any account, of the manner in which the goods came into his possession, proof of such possession and guilty conduct may sustain the inference not only that he stole the goods, but that he made use of the means by which access to them was obtained."

The same rule is found in 13 Am.Jur. 2d., Burglary, section 53, p. 354:

"It is always competent to show that property stolen from the premises charged to have been burglarized has recently been in the possession of the defendant or of some third person who is shown to have been concerned in the burglary, or who could have obtained

possession of it only from the defendant, provided the burglarious entry has been proved, the goods are identified with reasonable certainty, and the burglary and the larceny are shown to have been parts of the same transaction.

"When such proof has been made, the defendant has the right to explain his possession in order to rebut the unfavorable inference arising therefrom, and if he fails to give a satisfactory account of his possession, the jury may treat his failure as a fact in proof of his participation in the offense."

And in section 54 of 13 Am.Jur.2d., at pp. 355-356, it is said:

"Mere proof of possession of property recently stolen during the commission of a burglary does not raise a presumption of guilt as a matter of law. But in some jurisdictions proof of recent possession of the fruits of a burglary is regarded as presumptive or prima facie evidence of guilt of the burglary. In others it is not.

"It has been said that the fact of possession is evidence of guilt upon which a conviction may properly be returned, unless other facts or circumstances in the case are such that, notwithstanding the recent possession, the jury still entertains a reasonable doubt of the defendant's participation in the burglary, and it is in this sense that the words 'presumption' or 'prima facie evidence' must be understood when employed in this connection. Thus the term 'presumption of guilt' must

be understood as something which authorizes but does not require conviction. Even though it is said that proof of recent possession of property taken from the premises at the time of the burglary raises a presumption of the defendant's guilt, this seems only to mean that such possession, when established, is a fact from which the defendant's guilt may be inferred, and not that any burden of proof is thereby cast on the defendant. The inference is strong or weak according to character of the property, the nature of the possession, and its proximity to the time of the theft. In other words, proof of possession is a circumstance which should be left to the jury, with instructions to give it such weight as they think it entitled to, when considered in connection with all the other evidence, in determining the guilt or innocence of the defendant.

"It has also been held that where a breaking, and entering, and a larceny have been committed at the same time by the same persons, and the property or a part of it is shortly thereafter found in the exclusive possession of the defendant, and such possession of the stolen goods is unexplained or falsely denied, this is sufficient to raise an inference that the defendant is guilty of the breaking and entering."

The Supreme Court of Missouri said in State v. Clark, 438 S.W.2d 277:

" 'It has long been the rule that an inference of guilt is permissible from the possession of property recently stolen in a burglary, and the inference exists both as to the burglary and the stealing.' "

See also Peek v. State, 213 Tenn. 323, 328, 375 S.W.2d 863; Smith v. State, Tenn. Cr.App., 451 S.W.2d 716.''

In considering the weight and sufficiency of the evidence, as the Court said in Peek v. State, *supra,* we are met by a verdict of guilt, which, according to a long line of decisions, displaces the presumption of defendant's innocence, raises an inference of his guilt in this Court, and put upon him the burden of showing that the evidence preponderates against the verdict and in favor of his innocence. Ivy v. State, 197 Tenn. 650, 277 S.W.2d 363 (1954); Anderson v. State, 207 Tenn. 486, 341 S.W.2d 385 (1959).

■■ Likewise, it has long been the law of this State that the credibility of witnesses and conflicts in testimony are settled by the verdict of the jury when approved by the trial court. In this case much of the evidence presented by the State is diametrically opposed to the statements of the defense witnesses. Under such circumstances, it is the duty of the jury to determine the truth of the situation, following closely the instructions of the judge. In so doing, the jury should reconcile any conflicts of testimony which may be reconciled, but if such differences cannot be reconciled, then the duty of the jury is to accept that which they think true and reject the false. Holt v. State, 210 Tenn. 188, 357 S.W.2d 57; Anderson v. State, 207 Tenn. 486, 341 S.W.2d 385 (1959).

■ A guilty verdict, as previously discussed, accredits the testimony of witnesses for the State and establishes their credibility, and raises a presumption of the defendant's guilt, placing upon the defendant the burden of

showing that the evidence preponderates against the verdict. Gann v. State, 214 Tenn. 711, 719, 383 S.W.2d 32.

The defendant has failed to carry the burden of showing that the evidence preponderates against his guilt and in favor of his innocence.

We find the guilt of the defendant has been clearly established by the proof.

The assignments of error are overruled and the judgment of the trial court is affirmed.

Oliver and Galbreath, JJ., concur.