IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
May 2000 Session

## STATE OF TENNESSEE v. JEREMY JONES

**Direct Appeal from the Criminal Court for Greene County**
**No. 99CR034    James Edward Beckner, Trial Judge**

**No. E1999-02207-CCA-R3-CD**
**August 23, 2000**

The defendant appeals his conviction and sentence for theft of property, asserting that insufficient evidence supported the verdict and that the trial court erroneously sentenced him to three years of incarceration.  We affirm the conviction and modify the sentence to two years of incarceration.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed as Modified**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

Douglas L. Payne, Greeneville, Tennessee, for the appellant, Jeremy Jones.

Paul G. Summers, Attorney General & Reporter; Mark A. Fulks, Assistant Attorney General; C. Berkeley Bell, Jr., District Attorney General; and Eric D. Christiansen, Assistant District Attorney, for the appellee, State of Tennessee.

**OPINION**

**Introduction**

The defendant, Jeremy Jones, was convicted in the Greene County Criminal Court of theft of property valued between $1000 and $10,000.  Conceding that the property in question, a truck, was stolen, he argues that the evidence establishes neither his participating in the theft nor his knowing that the truck was stolen at any time prior to his arrest.  Further, he asserts that the trial court erred in sentencing him to three years of incarceration.  After careful review, we affirm the conviction and modify the sentence to two years.

## Background

From the jury verdict of guilty, we review the facts in a light most favorable to the state. When the victim, Terry McAmis, identified his stolen truck in a parking lot, he confronted the operator of the vehicle and contacted the local police department. The subsequent investigation established that the vehicle had altered vehicle identification numbers (VINs) and had been the subject of a "title swap" involving a similar, but salvaged, vehicle. Although the defendant maintained that he was an innocent purchaser, the jury rejected his testimony as well as testimony from the co-defendant. After conviction, the trial court denied the defendant's requested minimum two-year alternative sentence and instead imposed three years of incarceration.

## Trial Testimony

The victim testified that when he went outside on the morning of December 18, 1998, his 1987 Toyota 4x4 truck was gone. He reported the theft to the Greene County Sheriff's Department. At trial, the victim valued his truck between $7000 and $7500. Through his testimony, the state entered a certificate of registration for the vehicle.

On December 28, 1998, the victim saw a red Toyota truck at the Honda Shop parking lot. He entered the lot and recognized rust spots on the vehicle, including one that he had repaired with body filler. He confronted the two occupants, and the three entered the shop.[1] Josephine Nicholetta Shelton, working at the shop, called the police, and she testified that the defendant placed a call for a Brad, advising Brad that "you might come and get me out."

Several officers responded. Officer Roger Self testified that the defendant first claimed that he owned the license tag on the vehicle, then stated that the seller of the truck had given the tag to him. Officer Alan Dotson testified that Jones correctly described certain peculiarities of the vehicle; specifically, coins and two Pioneer radio knobs in the ashtray. Dotson said the license plate on the vehicle was registered to a 1987 Buick owned by a Brian Webb.

Detective Sergeant Don Jones noticed VIN alterations. He testified that recent vehicle models had both public and secured VINs. Public VINs are in plain view or may be easily found on a dashboard or inside the door frame. Secure VINs are less obvious and may be found in such areas as the engine and frame crossbeams. He found an unaltered VIN at the cross brace between the grill and the radiator of the vehicle.

Greeneville Police Department Detective Sergeant Terry Cannon also responded to the Honda Shop. He testified that the column of the vehicle had been broken off and the switch "puttied" back in. Cannon refused the defendant's request to take the license plate. Officer Self showed Cannon a knife taken from the occupants, a pocketknife with a "clip" for securing to one's

---

[1] One occupant was a Mr. Inman, who apparently had no further involvement material to this opinion.

pocket, and the defendant claimed the pocketknife. However, approximately fifteen minutes after the defendant left the officers, the plate was gone. A pocketknife, apparently the one returned to the defendant, was on the truck bumper.

Cannon further described his conversation with the defendant. The defendant said that on December 28, 1998, that very day, someone at a local health club approached him and asked if he wanted to buy a truck. The defendant first declined to identify the seller, then said his name was Chris, a tall blonde male who trained at the fitness center. The defendant told Cannon that he was going to seek a loan for the truck the next day at the bank. During this conversation, he admitted that he had borrowed the license plate from Brian Webb.

Like Officer Jones, Cannon noted various alterations and inconsistencies on the VINs throughout the truck. Some secured VINs matched the records for the stolen truck. Cannon concluded that the truck was, in fact, the one reported as stolen by McAmis.

Glenn Strange of Strange Auto Parts, a salvage yard, provided testimony regarding the origin of the altered VINs. He testified that on December 3, 1998, he received a deposit for a Toyota Forerunner and a Toyota pickup. By February 4, he had received payment in full, except for the sales tax, which was paid the next day. Strange stated that his records indicated Brad Webb made the payments and that the vehicles were transferred to Webb.

Cannon, seeking to "close the gap" between the stolen truck and the source for the altered VINs, told the defendant that he needed paperwork in the owner's name to release the vehicle. On January 5, 1999, the defendant and Brad Webb came to the station with a title in Webb's name. Webb, was, of course, not named "Chris" and did not match the original description given by the defendant. The title he presented was from one of the salvaged trucks. At that point, both men were arrested.

Webb[2] testified for the defendant and admitted his pending guilty plea for the theft. He stated that he offered the vehicle without telling the defendant that it was stolen. Webb testified that he decided to steal a vehicle roughly matching that of the salvaged truck after he purchased the two vehicles from Strange's salvage business. Although he did not remember stealing the truck, he did remember cutting out the VINs and welding others onto the stolen truck frame. He did not recall going to the salvage yard on January 4, 1999, but he did remember going to the yard the next day with the defendant.

The defendant testified that he received the truck from Webb on or up to three days before Christmas. He denied accompanying Webb to the salvage yard and emphatically denied having any knowledge or indication that the truck was stolen. He did not remember telling Cannon that he got the truck on December 28, 1999. He stated that he took the license plate from the truck because he did not remember Cannon saying that he couldn't. He did admit telling Cannon about Chris, the

---

[2] At trial, the testimony established that Bradley and Brian Webb are brothers.

fictitious seller. He also recalled asking officers at the Honda Shop if the numbers on the truck were wrong and removing the tag with his pocketknife.

After the jury returned a guilty verdict, the court conducted a sentencing hearing. The defendant had been arrested on August 12, 1998, for simple possession of cocaine and for possession of more than .5 grams of cocaine for resale. The twenty-year old defendant's prior conviction record consisted of a Class C and a Class B misdemeanor, both traffic offenses, both dismissed after a fine or driving school. The trial court placed great weight on the defendant's status as a leader in the offense and lesser weight on the defendant's prior criminal record. In mitigation, the trial court found that the crime did not threaten serious bodily harm or death.

The trial court denied alternative sentencing because the defendant committed the crime while on bond, indicating that he was not amenable to rehabilitation. The trial court also noted the defendant was untruthful because his testimony was rejected by the jury. Finally, the trial court also noted a need for deterrence.

## Analysis

### Sufficiency of Evidence

The defendant appeals the sufficiency of the evidence supporting the jury verdict against him for theft of property greater than $1000 but less than $10,000 in value, a Class D felony. See Tenn. Code Ann. § 39-14-103. When a defendant challenges the sufficiency of the evidence, this Court must determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). The appellee is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom. See State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

The credibility of witnesses, the weight of their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the trier of fact. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Gentry, 881 S.W.2d 1, 3 (Tenn. Crim. App. 1993). A jury verdict for the state accredits the testimony of the state's witnesses and resolves all conflicts in favor of the state. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Moreover, a guilty verdict removes the presumption of innocence enjoyed by defendants at trial and replaces it with a presumption of guilt. See State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Thus, an appellant challenging the sufficiency of the evidence carries the burden of illustrating to this Court why the evidence is insufficient to support the verdict. See State v. Freeman, 943 S.W.2d 25, 29 (Tenn. Crim. App. 1996).

The defendant was convicted of theft of property: "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent."  Tenn. Code Ann. § 39-14-103.  Since the uncontroverted trial testimony established that the truck was worth between $7000 and $7500, the theft is graded as a Class D felony.  See Tenn. Code Ann. § 39-14-105(3).

The evidence clearly established that the defendant was in possession of a stolen vehicle. "The unexplained possession of recently stolen property gives rise to the inference, in light of the surrounding circumstances, that the person in possession knew that the property was stolen."  State v. Anderson, 738 S.W.2d 200, 202 (Tenn. Crim. App. 1987).  The greater the time interval between the theft and the discovery of the property in an accused's possession, the weaker the inference of criminality.  See id.  The evaluation of a time interval depends on all the facts and circumstances of the case, and, intuitively, greater intervals increase the likelihood that stolen property was transferred to an innocent party.  See id.

Our state's Supreme Court discussed this inference and clarified its application to cases involving convictions for larceny in Bush v. State, 541 S.W.2d 391 (Tenn. 1976).  In Bush, three defendants were convicted of second degree burglary.  Id.  Defendant Marvin Bush's fingerprints were recovered from the firearms, and Bush's girlfriend testified that Jerry Bolton, another defendant, arrived at her residence around the time of the burglary, advised Bush that he had obtained some guns, and procured transportation to town from Bush.  See id. at 393.  Bush returned alone, and she then accompanied Bush back to town.  Bush, Bolton, Billy Walker, and Shadrack Dean, the third defendant, assembled around the open trunk of Dean's car at Walker's café.  See id. at 393.  An investigator recovered the guns from Walker, who testified that Bush and Dean brought the guns to him and sold them to him.  See id. at 394.

The Supreme Court opinion reiterated "the generally approved rule that proof of possession of recently stolen goods gives rise to the inference that the possessor has stolen them," even if possession is the sole basis for conviction and  is "'rebutted by evidence that is not patently false'" or "'explained in a credible fashion.'"  Id. (citations omitted).  The presumption may survive contradictory evidence, "even the positive testimony of witnesses."  Id. at 395-96 (citing Barnes v. United States, 93 S. Ct. 2357, 2362 (1973)).

Conversely, the possession alone does not "raise[ ] a conclusive presumption of guilt" but rather an inference on a continuum, from near certainty to questionable likelihood of guilt.  See id. at 396.  The accompanying facts determine the locus on this continuum.  See id.[3]

In the instant case, the defendant was found in possession of a stolen vehicle ten days after its theft.  Cf. Peek v. State, 375 S.W.2d 863, 864-65 (Tenn. 1964) (The presumption sufficiently supported a theft conviction when the defendant possessed a car seven days after it was stolen.).  In

---

[3] In Bush, the convictions were reversed and remanded to the trial court because of an improper jury instruction, which improperly asserted that the inference itself established guilt.  See id. at 398.

the instant case we also note suspicious circumstances that tend to establish the defendant's guilt: the defendant's initial fabrication as to the origin of the vehicle and his persistence in recovering the incriminating license tag. Cf. Anderson, 738 S.W.2d at 204. We further note testimony, by the defendant's own witness, that the defendant was in his company to complete purchase of the salvaged vehicles. Cf. State v. Land, 681 S.W.2d 589, 590, 592 (Tenn. Crim. App. 1984) (The defendant asserted that a boat in his possession was his and was subsequently convicted of grand larceny.).

The defendant offered an explanation for his possession, asserting ignorance that the vehicle was stolen. Webb also testified that the defendant did not know that the vehicle was stolen. "The reasonableness of an explanation offered by one found in possession of recently stolen property is primarily a question for the jury to determine from all the evidence, the fact that possession being usually but one item of proof." Cameron v. State, 546 S.W.2d 261, 263 (Tenn. Crim. App. 1976). The jury determines the weight and credibility of a proferred alibi. See State v. Gautney, 607 S.W. 2d 907, 909 (Tenn. Crim. App. 1980); Smith v. State, 566 S.W.2d 553 (Tenn. Crim. App. 1978); Smith v. State, 451 S.W.2d 716, 718 (Tenn. Crim. App. 1969).

The jury, not this Court, hears and views the witnesses as they testify, and that body is entrusted with the evaluation of the evidence and the credibility of the witnesses. In the instant case, that body rejected the defendant's explanations and convicted him as charged. The evidence established the value of the property, that it had been stolen from the owner ten days before the defendant had possession of the property, and that the defendant was untruthful and secretive with the investigators regarding that possession. We conclude that the evidence was sufficient to satisfy the elements of the statute.

## Sentencing

The defendant asserts that the trial court misapplied enhancement factors and erroneously imposing incarceration rather than an alternative sentence. When a defendant challenges the length or manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record "with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). We review this sentence de novo, for reasons discussed below.

### *Enhancing and mitigating factors*

The trial court applied two statutory enhancement factors:
The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; [and]. . . The defendant

was a leader in the commission of an offense involving two (2) or more criminal actors[.]

Tenn. Code Ann. § 40-35-114(1), -(2).[4] Then, that court applied one mitigating factor, "[t]hat the defendant's conduct neither caused nor threatened serious bodily injury." Tenn. Code Ann. § 40-35-113(1). From the presumptive minimum sentence of two years for a Range I standard offender on a Class D felony conviction, see Tenn. Code Ann. §§ 40-35-133(a)(4), -210(c), the trial court imposed a three-year sentence, one year below the maximum four-year sentence.

We do not find that the record supports a conclusion that the defendant was a leader in the offense, see, e.g., State v. Hicks, 868 S.W.2d 729, 731 (Tenn. Crim. App. 1993) ("Both of two criminal actors may be a leader in the commission of an offense.")(citations omitted), although we reject the defendant's assertion that "quite to the contrary, the evidence clearly showed that Brad Webb was solely responsible for the theft." Regarding the prior criminal history, the defendant had been convicted of speeding and reckless driving, Class B and Class C misdemeanors, that were dismissed after the defendant paid a fine on one conviction and completed a driving school on the other. Some weight was properly afforded to these misdemeanor convictions. See State v. Ray Charles Gasaway, No. 01C01-9703-CR-00101 (Tenn. Crim. App. filed March 24, 1998, at Nashville).[5]

On our de novo review, we grant little weight to mitigation factor (1). Authority supports the proposition that the factor is inherent in every theft, contrasted with burglaries, such that lack of threat to life or limb in a specific case is not especially noteworthy, see State v. Charles Chesteen, No. E1999-00910-CCA-R3-CD (Tenn. Crim. App. filed June 8, 2000, at Knoxville); State v. Joel Guilds, No. 01C01-9703-CC-00112 (Tenn. Crim. App. filed May 27, 1998, at Nashville), although these cases regarded embezzlement or similar offenses outside the instant context of nocturnal theft from outside a residence.

In conclusion, enhancement factor (1) and mitigation factor (1) remain, and, granting both factors little weight, we impose the minimum sentence of two years.

### *Alternative sentence versus incarceration*

The defendant asserts that he should have received alternative sentencing and not incarceration. In support of his argument, the defendant cites his prior employment, although he was unemployed at sentencing, and claims he has a history devoid of drug abuse or psychiatric problems.

---

[4] Although the defendant's brief asserts that the trial court enhanced the sentence in part because he committed the instant offense while on bond, that court acknowledged that the bonded status was not a statutorily enumerated factor and reserved that concern for determining the nature and not the length of sentence.

[5] The trial court properly declined to consider the narcotics arrests as bases for enhancement factor (1). See State v. Miller, 674 S.W.2d 279, 284 (Tenn. 1984); State v. Buckmeir, 902 S.W.2d 418, 424 (Tenn. Crim. App. 1995).

To merit the statutory presumption for alternative sentencing provided in Tennessee Code Annotated § 40-35-102(6), a defendant must (1) be an especially mitigated or a standard offender; (2) be convicted of a Class C, D, or E felony; and (3) not possess a "criminal histor[y] evincing a clear disregard for the laws and morals of society" or "evincing failure of past efforts at rehabilitation[.]" See Tenn. Code Ann. § 40-35-102(5), -(6). A Class D felony standard offender and not an offender classified by the statutes as a priority for incarceration, the defendant is "presumed to be a favorable candidate for alternative sentencing options." Tenn. Code Ann. § 40-35-102(6).

Although we must therefore consider probation, "the defendant is not automatically entitled to probation as a matter of law." See Tenn. Code Ann. § 40-35-303(b) sentencing comm'n comments; State v. Harley, 818 S.W.2d 370, 373 (Tenn. Crim. App. 1991). To implement the purposes of the Criminal Sentencing Reform Act of 1989, we consider whether (1) incarceration is necessary to protect the public from an offender with a long history of criminal conduct; (2) incarceration "is necessary to avoid depreciating the seriousness of the offense" or "is particularly suited to provide an effective deterrence to others likely to commit similar offenses"; and, (3) "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]" Tenn. Code Ann. § 40-35-103 (1)(B)-(C). Although two factors were improperly applied, we agree with the trial court's finding sufficient evidence to defeat the presumption favoring alternative sentencing.

Regarding deterrence, the "evidence in the record must support a need to deter individuals other than the appellant from committing similar crimes." State v. Zeolia, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996). Any incarceration implies some degree of deterrence, see State v. Davis, 940 S.W.2d 558, 560 (Tenn. 1997), and the trial court's findings regarding any particular deterrent effect of incarceration on theft crimes were, at best, limited: "The theft offense being the number one offense committed in this district or anywhere else in the United States or the world, I guess, it is important in sentencing to deter." Confinement for deterrence's sake, however, must be based on specific findings, and conclusory determinations are insufficient. See State v. Ashby, 823 S.W.2d 166, 170 (Tenn. 1991). We conclude that the record does not establish the required specificity, and this factor was not a valid basis for incarceration in the instant case.

The trial court also found that "the jury had to find that you testified falsely under oath and that you did so blatantly and that is a factor for denying probation and alternative sentencing." The trial judge is in the position of a thirteenth juror, evaluating witness credibility from a first-hand perspective. Further, the trial courts should consider evidence from trial and a defendant's potential for rehabilitation, as noted in our recitation of the standard of review, and candor, remorse, and credibility are proper considerations as they reflect on the potential for rehabilitation. See Tenn. Code Ann. § 40-35-103(5); State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983); State v. Dowdy, 894 S.W.2d 301, 306 (Tenn. Crim. App. 1994). A defendant's lack of candor during testimony may be considered by the trial court in determining eligibility for alternative sentencing. See State v. Neeley, 678 S.W.2d 48, 49 (Tenn. 1984); State v. Jenkins, 733 S.W.2d 528, 535 (Tenn. Crim. App. 1987).

Regarding success of recent measures less restrictive than confinement, the trial court concluded that the defendant committed the instant offense while on bond for two narcotics violations, one a Schedule II possession for resale that carried a possible Class B felony offense penalty. We agree that the defendant was the unsuccessful recipient of a recently imposed measure less restrictive than incarceration and that confinement, in lieu of alternative sentencing, is therefore appropriate. See, e.g., State v. David Carl Orr, No. W1998-00010-CCA-R3-CD (Tenn. Crim. App. filed May 19, 2000, at Jackson); State v. Kenneth A. Price, No. 01C01-9310-CC-00338 (Tenn. Crim. App. filed April 28, 1994, at Nashville) (decisions considering bond status at time of offense as basis for denying alternative sentencing, albeit in conjunction with other considerations). A defendant who commits a felony theft while on bond for two Schedule II narcotics offenses demonstrates that he is not a likely candidate for a successful rehabilitation.

The defendant's argument for alternative sentencing addresses Community Corrections and cites State v. Ball, 973 S.W.2d 288, 295 (Tenn. Crim. App. 1998). Although the instant case shares some similarities with Ball, that reported opinion makes no mention of any bonded status of the offender in that case, a significant difference in circumstances. We conclude that the trial court properly denied alternative sentencing.

## CONCLUSION

We affirm the conviction and modify the sentence to two years.

_____
JOHN EVERETT WILLIAMS, JUDGE