Bobby JOHNSON, Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee, at Jackson.

Nov. 8, 1979.

Permission to Appeal Denied by Supreme Court Feb. 25, 1980.

Wayne Emmons, Edward W. Chandler, Memphis, for appellant.

William M. Leech, Jr., Atty. Gen., Charles L. Lewis, Asst. Atty. Gen., Nashville, Edgar A. Peterson, IV, Asst. Dist. Atty. Gen., Memphis, for appellee.

## OPINION

DAUGHTREY, Judge.

This is an appeal by Bobby Johnson from his conviction of second degree burglary, for which he received a sentence of not less than three nor more than ten years in the state penitentiary. After a careful review of the record, we conclude that none of the issues raised on appeal entitles the defendant to a new trial, and we affirm the conviction.

Johnson was indicted for first degree burglary of the "mansion-house of Michael J. Wines," and petit theft of Wines' wallet and its contents. The proof showed that on May 20, 1976, Wines was occupying room 226 at the Quality Inn Motel in Memphis, Tennessee. On awakening at approximately 6:15 A.M., he was immediately aware that "something was wrong in the room." Rousing himself, he looked toward the end of the bed and saw a man crawling across the carpet on his hands and knees. He testified that the draperies in the room were open and that there was enough light to view the face of the intruder, who looked at him and then ran out of the room. Wines started to follow, but then realized that he "wasn't dressed for the chase." He took time to pull on jeans, but by the time he finally reached the hall, there was no sign of the intruder. However, Wines did see another man knocking on a nearby door. This individual told Wines he thought that someone had just gotten onto the elevator. Wines took the elevator to the lobby; there the nightclerk reported that no one had recently left the motel. Warning the clerk "not to let anyone out," Wines returned to the elevator and stopped at every floor, looking for the burglar. On the fifth floor Wines spotted the intruder, standing in the hall with the man Wines had seen earlier on the second floor. Confronted by Wines, the two men ran down the hall and into the stairwell.

Wines returned to the lobby and was told that someone had just run out of the motel. He went out the front door in time to see one of the two men, not the burglar, backing a white Cadillac out of the motel lot. Police officers arrived simultaneously, and they pursued the Cadillac onto the interstate, stopping it about a mile from the motel. The police arrested the driver, Deloy Polk, and brought him back to the motel.

Polk told officers that he had come to the motel at the request of Bobby Johnson, the occupant of room 222. Officers went to that room, knocked on the door, and were let inside by the defendant. Soon afterwards, Wines was brought to room 222, where he identified Johnson as the man he had seen in his room earlier that morning. Wines also pointed out to officers a bright pink leisure suit that he said the defendant was carrying when he saw him with Polk on the fifth floor of the motel.

Polk was jointly indicted with Johnson, but his case was severed and he pleaded guilty to burglary and larceny in 1977. On July 18, 1978, three days before Johnson's trial was to begin, Polk appeared in court

on a petition to suspend the remainder of his sentence. His probation petition was granted, but apparently not with the State's approval. During the hearing the Assistant District Attorney responsible for the prosecution of Polk and Johnson requested that a subpoena be issued to compel Polk's attendance as a witness for the State at Johnson's upcoming trial. After the hearing, the prosecutor served notice on Johnson's attorneys that he intended to call their client's former co-defendant to testify against him.

Johnson's attorneys moved for a continuance on the first morning of trial. They contended that they had had insufficient notice of the proposed accomplice testimony to prepare to meet it. They also argued that the State had deliberately covered up the fact that Polk would be called to testify.

■ The trial judge denied the motion for a continuance, and we think his ruling was correct. The record refutes any allegation of improper conduct by the prosecutor. It appears that he was unaware of the existence of Polk's probation petition until the docket call on July 18, because Polk's attorney did not give notice to the District Attorney's office. Furthermore, the defendant cannot claim surprise, because the witness in question was a co-defendant whose identity had been known to Johnson for two years prior to trial. Moreover, although the prosecutor served notice of his intent to call Polk as a witness at the earliest opportunity, Polk refused to talk to defense attorneys at any length or to give them a recorded statement. They nevertheless were able to secure a transcript of the testimony Polk gave at his July 18 probation hearing and used it effectively to impeach his testimony as Johnson's July 31 trial. It thus appears from the record that the defendant suffered no actual prejudice from the failure to grant a continuance, and we further find that he has failed to demonstrate that he "did not have a fair trial [or] that a different result would or might

reasonably have been reached had there been a different disposition of the application for a continuance." *Maxwell v. State*, 501 S.W.2d 577, 580 (Tenn.Cr.App.1973). We therefore hold that the trial judge did not abuse his discretion in denying the defendant's motion for a continuance. See generally, *Steele v. State*, 4 Tenn.Cr.App. 70, 467 S.W.2d 838 (1970).

Polk testified for the State that Johnson telephoned him at approximately 5:30 A.M. on the day of the burglary and told him that he had "gotten into a little trouble at the motel" and wanted him to come to the Quality Inn. After Polk arrived at the motel, Johnson told him he had been "caught in a man's room and needed a way to get away from over there." Polk testified that he did not want to get involved and told Johnson so. But, he said before he could leave the motel, he was seen by Wines, and as a result, he was subsequently arrested by Memphis police officers.

■ Although there were discrepancies in Polk's testimony, when it is viewed in the light most favorable to the State and weighed in conjunction with Wines' in-court identification of Johnson as the man he saw in his motel room, we think the evidence is clearly sufficient to sustain the defendant's conviction of second degree burglary.[1] Certainly we are unable to say that "no rational trier of fact could find proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2792, 61 L.Ed.2d 560, 576 (1979); see also Tennessee Rules of Appellate Procedure, Rule 13(e). It follows that the trial judge was correct in overruling the defendant's motion for acquittal and that the evidence is sufficient to support the judgment below. *State v. Cabbage*, 571 S.W.2d 832 (Tenn. 1978).

■ Nor do we find any merit to the defendant's contention that the State failed to satisfy the requirement of the statute

---

1. The trial judge granted the defendant's motion for acquittal of first degree burglary, finding that there was insufficient proof that the offense was committed in the nighttime. Compare T.C.A. § 39–901 with T.C.A. § 39–903.

that the premises burglarized must be proven to be those "of another." The defendant argues that there was no evidence that room 226 was actually registered to Mr. Wines, but the undisputed proof shows otherwise. On direct examination Wines was asked if the room "was registered to you under your name" and he replied in the affirmative.

■ Likewise without merit is the argument that the State failed to prove venue in this case. Wines testified that he "believed" the Quality Inn was located in Shelby County, Tennessee. Furthermore, one of the investigating officers and the co-defendant, Deloy Polk, both testified unequivocally that the motel where the burglary occurred was located in Shelby County. This was clearly a sufficient factual basis to support the jury's finding with regard to venue.

Next the defendant contends that the judgment must be reversed and the indictment against him dismissed because of a fatal variance between the proof and the allegation in the indictment that he burglarized Wines' "mansion-house." Wines testified that in May 1976 he was a legal resident of Bethel, Connecticut, and that he was staying at the Quality Inn while in Memphis on business. The defendant insisted at trial that only one's legal residence qualifies as a "mansion-house" and that the proof therefore failed to establish the allegation contained in the indictment.

In response, the State relied on this Court's opinion in *Wyatt v. State*, 4 Tenn. Cr.App. 1, 467 S.W.2d 811, 814 (1971), in which we held that "a hotel room under the facts and circumstances of [the *Wyatt*] case is a dwelling house and that the breaking and entering the hotel room of another by night with intent to commit larceny, is burglary in the first degree." [2] According to the *Wyatt* opinion, "[a] dwelling house has been variously defined as the apartment, room in a hotel, building, or cluster of buildings, in which a man with his family resides, or any permanent building in which a party may dwell and lie." 467 S.W.2d at 814, quoting 13 Am.Jur. Burglary 321, 322. Although it was apparently a case of first impression in this state, *Wyatt* was clearly in line with Tennessee law, which has long recognized that "every house or permanent edifice for the dwelling or habitation of man is taken to be a mansion-house, in which burglary may be committed. . . ." *Armour v. State*, 22 Tenn. (3 Humph.) 379, 383–4 (1842).

The defendant does not dispute the fact that under *Wyatt* the State may properly prove that the premises allegedly burglarized consisted of a motel room. However, he insists that if the State intends to *prove* the burglary of a motel room, the State must specifically *plead* the burglary of a motel room. In support of this contention, the defendant relies on the express language in the first and second degree burglary statutes, T.C.A. §§ 39–901 and 39–903. Under those provisions, it is unlawful to break and enter "a dwelling house, *or any other house, building, room or rooms therein used and occupied by a person or persons as a dwelling place or lodging either permanently or temporarily and whether as owner, renter, tenant, lessee or paying guest . . . .*" with felonious intent (emphasis added). The defendant argues that soon after the *Wyatt* opinion was released, the legislature amended the first and second degree burglary statutes to add the emphasized language,[3] and that as a result it is incumbent upon the State to plead *and* prove the specific kind of "house, building, room or rooms" which the defendant is charged with burglarizing. We cannot agree with this interpretation of the law and statutes.

■ We recognize that Tennessee follows a rather stringent variance rule. Our courts have held, for example, that while

---

2. There is no dispute that the term "mansion-house" is synonymous with the term "dwelling house" for purposes of the burglary statute. The terms have been used interchangeably in Tennessee law at least since the time of *Armour v. State*, 22 Tenn. (3 Humph.) 379 (1842).

3. Acts 1971, Ch. 2, §§ 1, 2.

"[i]t was not necessary for the State to have charged in the first indictment that the crime was committed with a particular type of firearm . . . , [if] the State elected to specify the firearm as being a pistol, it was necessary to prove that the crime was accomplished with a pistol and not a rifle." *Martin v. State,* 542 S.W.2d 638, 641 (Tenn.Cr.App.1976), discussing the rule in *State v. Brooks,* 224 Tenn. 712, 462 S.W.2d 491 (1970). Thus, under Tennessee law, "if a person or thing necessary to be mentioned in an indictment is described *with greater particularity than is requisite,* such person or thing must be proved exactly as described in the indictment." *Martin v. State, supra* at 641 (emphasis added).

■ But in this case, we conclude that "thing necessary to be mentioned" was not described "with greater particularity than is requisite," and thus the variance rule is inapplicable. The trial judge ruled that the failure to specify in the indictment the type of dwelling allegedly burglarized was not fatal to its validity. We agree with this conclusion, based upon our reading of the third degree burglary statute, T.C.A. § 39–904, *in pari materia* with the provisions in T.C.A. §§ 39–901 and 39–903, governing first and second degree burglary.

In T.C.A. § 39–904 the legislature has made it unlawful to break and enter "a business house, outhouse, or *any other house of another, other than a dwelling house,* with the intent to commit a felony (emphasis added)." Reading the provisions together, it is clear to us that the legislature intended in T.C.A. §§ 39–901 and 39–903 to protect dwelling houses and other places of "lodging" or habitation, and in T.C.A. § 39–904 to protect every other kind of building "other than dwelling house[s]." Thus, the 1971 amendment to T.C.A. §§ 39–901 and 39–903 must be interpreted as a codification of this Court's holding in *Wyatt v. State,* and as such the language of the amendment is merely illustrative of the kinds of buildings or rooms which constitute a "dwelling house" for purposes of the first and second degree burglary statutes. We therefore hold that it was not necessary for the State to charge the offense in more specific terms than those employed in the indictment and that there was no fatal variance between the pleadings and the proof.[4]

■ Moreover, we note that the defendant in this case had actual written notice of the specific "mansion-house" which the State proposed to prove at trial. The record shows that on July 18, 1978, the State filed a motion to compel the defendant to provide notice of alibi defense under Rule 12.1 of the Tennessee Rules of Criminal Procedure.[5] Pursuant to subsection (a) that rule, the State advised the defendant in its motion that "the alleged offense was committed at the Quality Inn Motel, Room 226, 5877 Poplar Avenue, Memphis, Tennessee, on May 20, 1976, around or about 6:15 a. m."[6] Given the fact of actual notice, and in the absence of any allegation or indication that the indictment was not sufficiently drafted so as to provide the defendant with the ability to plead *autrefois convict* or *autrefois acquit,* should he be charged with the same offense in the future, we find that there was no prejudice to the defendant

4. However, we would also note that a more particularized description of the place alleged to have been burglarized would have been valid under the 1971 amendment. Had the State elected to describe the burglarized premises more specifically, it would then have been incumbent upon the State to prove the allegation "exactly as described in the indictment." *Martin v. State, supra,* at 641. To do otherwise, in the hypothesized situation, would have required the application of the variance rule and dismissal of the indictment.

5. The defendant contends that the Court improperly granted the State's Rule 12.1 motion,

on the ground that the new Rules do not apply to a case in which the indictment was returned prior to their effective date. Since there was no alibi defense interposed in this case, we find the issue to be moot.

6. While a variance between the pleadings and the proof ordinarily need not be raised until all the proof is in, where the defendant is put on notice prior to trial of a possible variance, we think it is incumbent upon him to raise the matter prior to trial. It is fundamental that alleged errors should be brought to the trial court's attention at the earliest opportunity.

caused by the State's failure to specify with more particularity the place allegedly burglarized. As our Supreme Court has noted, "[i]t is the universal rule that a variance between pleading and proof in a criminal case is not material . . . where the variance is not of a character which would have misled the defendant at the trial." *Brown v. State*, 186 Tenn. 378, 210 S.W.2d 670, 675 (1948); see also *State v. Yates*, 217 Tenn. 160, 395 S.W.2d 813 (1965); *Daughtery v. State*, 221 Tenn. 56, 424 S.W.2d 414 (1968). We conclude that the defendant was adequately notified of the charge by the terms of the indictment, as well as by the actual notice provided under Rule 12.-1(a), and that he was in no way mislead. We therefore hold that his challenge to the indictment is legally without merit and must fail.

■ Nor do we find any merit to the remaining points raised by the defendant on appeal. Johnson complains that the trial court "erred in refusing to order witness Michael J. Wines to give a pretrial statement." However, there is no written or verbal order in the record memorializing such a ruling by the trial court, and we are unable to review the question on appeal. While we endorse the position taken in the ABA Standards Relating to the Prosecution and the Defense Function Section 4.3(c) and concur with the defendant that it is "improper for a prosecutor . . . to suggest to a witness that he not submit to an interview by opposing counsel," *id.*, Comment to Section 4.3, we find that the record in this case is devoid of proof that the prosecutor or the trial judge acted other than in accordance with these standards.

■ The one-on-one confrontation between the defendant and the victim, arranged for the express purpose of identification, was not unconstitutional, because it was an on-the-scene investigatory procedure, instituted shortly after the offense occurred. *Russell v. State*, 489 S.W.2d 535 (Tenn.Cr.App.1972); *Bracken v. State*, 489 S.W.2d 261 (Tenn.Cr.App.1972). Furthermore, the trial judge, utilizing the standards set out in *Neil v. Biggers*, 409 U.S.

188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), found that the victim's in-court identification was based on his observation of the defendant at the time the offense occurred and properly held that it did not violate due process.

■ The defendant contended at trial that the pink suit introduced against him was the product of an invalid search and seizure, occurring on the heels of his illegal arrest. The record fails to bear out this contention. The trial judge ruled that the police had probable cause to investigate the defendant's complicity in the burglary, based on the victim's identification of Deloy Polk and Polk's statement implicating Johnson. Under the Tennessee Supreme Court's analysis and ruling in *State v. Goad*, 549 S.W.2d 377 (Tenn.1977), we reach the same conclusion.

■ The defendant next asserts that the trial judge erred in refusing to permit the introduction of Wines' prior statement to police as a means of impeaching his trial testimony. The trial judge correctly ruled that only those parts of the statement which were in fact contradictory could be introduced to impeach Wines' testimony, since the statement itself would be hearsay if offered for substantive purposes. See generally E. Cleary, *McCormick on Evidence* § 251 (2d ed. 1972); D. Paine, *Tennessee Law of Evidence* § 195 (1974). There were no inconsistencies between Wines' statement and his trial testimony, but defense counsel contended that because the victim failed to include a description of the burglar's clothing in his pretrial statement to police, the entire statement became admissible to impeach his description of the burglar elicited on cross-examination. The State now argues in response that a prior statement may be rendered inconsistent for impeachment purposes if it fails to mention a *material* circumstance included in the witness's trial testimony; the test is whether the trier of fact might reasonably find that a witness testifying sincerely would have been unlikely to have made a prior statement containing such an omission. *McCormick on Evidence, supra*, § 34. As the

State correctly points out Wines' statement does not fit the rule. Since it was given *after* the defendant was identified by Wines and taken into custody, there would be no reason for Wines to have included an unsolicited description of the burglar. We therefore find that the trial judge properly limited the use of his prior statement at trial.

 Nor do we find any abuse of discretion in the trial judge's ruling under *State v. Morgan*, 541 S.W.2d 385 (Tenn.1976), that the defendant's many prior convictions dating back to 1950 were admissible to impeach his testimony, even though some of them may have fallen outside *Morgan's* ten-year rule. That rule prohibits evidence of a witness's prior convictions if more than ten years have passed since the date of conviction or release from confinement, "unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." 541 S.W.2d at 389. At a hearing outside the jury's presence, the trial judge found that the defendant's lengthy criminal record indicated a continuing course of criminal conduct which was probative of his credibility. He therefore held that all of Johnson's prior felony convictions for burglary and larceny were admissible under *Morgan*. We fail to find any abuse of discretion under the "specific facts and circumstances" of this case.

Finally, we hold that the trial court's charge to the jury on reasonable doubt was full and correct, and that he did not err in refusing to deliver the defendant's specially requested instructions. See *Crumsey v. State*, 3 Tenn.Cr.App. 285, 460 S.W.2d 858 (1970); *Hall v. State*, 200 Tenn. 436, 292 S.W.2d 716 (1956). Nor do we find that the prosecutor violated the defendant's right to remain silent by asking Deloy Polk about his motivation in pleading guilty to the same charges as those being contested by the defendant. The record fails to substantiate the defendant's contention that the jury would necessarily have drawn the conclusion that the defendant had failed to testify in order to avoid the introduction of his prior criminal record. The jury was specifically instructed that they were to draw no inference whatsoever from the defendant's decision to exercise his right not to testify. The law presumes, in the absence of proof to the contrary, that the jury followed the trial court's instruction. *Craig v. State*, 524 S.W.2d 504 (Tenn.Cr.App. 1974).

Our review of the record convinces us that the defendant received a fair trial. Finding no error, we affirm the judgment of the trial court.

WALKER, P. J., and O'BRIEN, J., concur.