IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 12, 2003

## STATE OF TENNESSEE v. TAMMY ANNETTE BURRUSS

**Appeal from the Circuit Court for Bedford County**
**No. 14943     Lee Russell, Judge**

---

**No. M2002-01261-CCA-R3-CD - Filed July 2, 2003**

---

The defendant, Tammy Annette Burruss, was convicted by a Bedford County Circuit Court jury of theft of a vehicle worth more than $10,000, a Class C felony, for which she received a four-year sentence as a Range I, standard offender. She contends that the evidence is insufficient to support her conviction and that the trial court erred by allowing the state to impeach her with a prior bad check conviction pursuant to Tenn. R. Evid. 609(b). We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and THOMAS T. WOODALL, J., joined.

Robert S. Peters, Winchester, Tennessee, for the appellant, Tammy Annette Burruss.

Paul G. Summers, Attorney General and Reporter; Christine M. Lapps, Assistant Attorney General; William Michael McCown, District Attorney General; and Michael David Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case relates to the defendant's use of a rental car. C. A. Adcock, an agent for Easy Auto and Truck Rental in Shelbyville, testified that he rented a 1998 Chevrolet Lumina to the defendant on March 8, 2001. He said that the defendant signed a one-day rental contract and initialed the contract's terms. He said that the defendant knew she was renting the car for one day and that the description of the car, the rental price, and the March 9 return date were filled in before the defendant signed the contract. He said that he photocopied the defendant's driver's license and that she gave him two telephone numbers and a $100 deposit. He said that the defendant did not return the car on March 9 and that Easy Auto tried to contact her by calling the two telephone numbers she had provided. He said that he was not aware of any attempts the defendant made to contact Easy Auto and that if she had tried to contact the company, a notation would have been on the contract. He said that he did not see the car again until he picked it up from the Cookeville Police Station on April 4,

2001. On cross-examination, Mr. Adcock testified that the car had been driven almost 2,800 miles and was very dirty when he recovered it on April 4.

Clyde Adcock, part owner of Easy Auto and Truck Rental, testified that he attempted to contact the defendant more than once by calling the telephone numbers on the contract. He said one of the numbers was disconnected and the other rang with no answer. On March 13, 2001, he sent the defendant a certified letter telling her to return the car immediately or he would report it stolen. He said that he received no reply and reported the car stolen to the Shelbyville Police Department on March 28, 2001. He said he heard nothing more until the police department notified him on April 3, 2001, that the Lumina had been recovered. He said that he was not aware of any attempts the defendant made to contact Easy Auto and that there were no notations on the contract indicating she had done so. He said the Lumina was worth $12,000.

Officer Mead McWhorter of the Cookeville Police Department testified that as he patrolled the area near the Star Motor Inn in Cookeville on April 3, 2001, he saw the defendant walk from her hotel room toward a Lumina. He said that when the defendant saw him, she turned away and went back to her room. He said that because of this behavior, he checked the Lumina's license plate number and learned that the car had been reported stolen. He said that he radioed for backup and that when the defendant later walked to the car, he asked her who was driving it. When the defendant replied that she was, he ran a computer check on her, which revealed that a warrant had been issued for theft of property valued over $10,000. He said he arrested the defendant and impounded the car. He said that the car was full of the defendant's personal belongings and that it appeared she had been living out of it.

The defendant testified that she gave C. A. Adcock her correct address and telephone numbers in order to rent the Lumina and that she had rented cars from Easy Auto and Truck Rental before. She said that one of the telephone numbers was for her cellular telephone and that the other was for her home telephone. She said that the home telephone later was disconnected. She said she did not return the car on Friday, March 9 because she finished work late, and by that time, Easy Auto was closed. She said she intended to return the car on Monday morning because Easy Auto was closed on weekends. She said that on the evening of March 9, she received a telephone call from Mary Strayhorn, who asked her to come to Cumming, Georgia to help with a horse auction on March 10. She said that she left for Cumming on the night of March 9, that she worked as a rider at the auction, and that her cellular telephone was active but did not work in Cumming.

The defendant testified that during the auction, she was injured when a horse fell on her and that she was hospitalized in Cumming Regional Hospital for four days. She said that after she was released from the hospital, she telephoned Easy Auto from Cumming to explain the situation. She said she spoke with a man who instructed her to return the car as soon as possible. She said she had rented cars from Easy Auto twice before and had returned one car late with no problems. She said she remained in Cumming for seven to ten days after her release from the hospital because she was wearing a brace and could not drive. She said that she drove to Cookeville, Tennessee on April 1 or 2 to meet her boss and that she needed his help to return the Lumina. She said that she intended to return the car on April 4, 2001, but was arrested on April 3, 2001. She said that she only had two suitcases and her makeup in the Lumina and that she never intended not to return the car.

On cross-examination, the defendant admitted having a prior conviction for writing a worthless check. She said that during her booking on April 3, 2001, she told the jailers that she worked for Reed's Livestock. She said that the jailers mistakenly wrote on her jail intake forms that she was self-employed and working for Libby Christmas.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence is insufficient to show that she intended to deprive Easy Auto and Truck Rental of the Lumina as required for theft under Tenn. Code Ann. § 39-14-103. She argues that she is guilty of no more than the unauthorized use of an automobile under Tenn. Code Ann. § 39-14-106, which does not require an intent to deprive the owner of the property. The state responds that because the defendant kept the car for twenty-seven days, failed to return home or answer her telephone calls, filled the car with her personal belongings, failed to telephone Easy Auto and Truck Rental, and avoided Officer McWhorter when she first saw him, the jury had ample evidence to conclude that the defendant did not intend to return the car. We agree with the state.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

A person is guilty of theft if the person, with the intent to deprive the owner of property, knowingly obtains or exercises control over the property without the owner's effective consent. Tenn. Code Ann. § 39-14-103. "Deprive" means to "[w]ithhold property from the owner permanently or for such a period of time as to substantially diminish the value or enjoyment of the property to the owner." Tenn. Code Ann. § 39-11-106(a)(8)(A).

Taken in the light most favorable to the state, the evidence reflects that the defendant understood she was renting the car for one day and that she was supposed to return it to Easy Auto on March 9. It shows that the car was returned to Easy Auto twenty-seven days later and only after the police found it and arrested the defendant. As is its prerogative, the jury accredited the state's witnesses who testified that the defendant never attempted to contact Easy Auto to explain the situation, did not answer Easy Auto's telephone calls, did not respond to the certified letter Easy Auto sent her, and avoided Officer McWhorter when she first saw him. Moreover, we note that although Cumming, Georgia is only about 240 miles from Shelbyville and the defendant claimed she could not drive for ten days, she put almost 2,800 miles on the car by the time Easy Auto got it back on April 4. We conclude that a rational jury could find from the evidence that the defendant intended to deprive Easy Auto and Truck Rental of the Lumina and was guilty of theft of more than $10,000 beyond a reasonable doubt.

## II. PRIOR CONVICTION FOR IMPEACHMENT

The defendant contends that the trial court erred by allowing the state to impeach her with a prior bad check conviction. She argues that the conviction's prejudicial effect outweighed its probative value. The state contends that the bad check conviction was probative of the defendant's honesty and was not so similar to theft that it would cause the jury to conclude that she also was guilty of that offense. We agree with the state.

Pursuant to Rule 609, Tenn. R. Evid., the credibility of the defendant may be attacked by presenting evidence of prior convictions if certain conditions are met. The convictions must be punishable by death or imprisonment over one year or must involve a crime of dishonesty or a false statement. Tenn. R. Evid. 609(a)(2). Also, the impeaching conviction's probative value on credibility must outweigh its unfair prejudice. Tenn. R. Evid. 609(a)(3). In determining whether the probative value of a prior conviction on the issue of credibility outweighs its unfair prejudicial effect on the substantive issues, a trial court should consider the similarity between the crime in question and the underlying impeaching conviction, as well as the relevance of the impeaching conviction with respect to credibility. State v. Farmer, 841 S.W.2d 837, 839 (Tenn. Crim. App. 1992). If "the prior conviction and instant offense are similar in nature the possible prejudicial effect increases greatly and should be more carefully scrutinized." Long v. State, 607 S.W.2d 482, 486 (Tenn. Crim. App. 1980). A trial court's ruling under Rule 609 will not be reversed absent an abuse of discretion. See Johnson v. State, 596 S.W.2d 97, 104 (Tenn. Crim. App. 1979).

This court has held that passing a worthless check is dishonest conduct and an appropriate subject for impeachment. See State v. Bivens, 967 S.W.2d 821, 825 (Tenn. Crim. App. 1996). Given the probative value of the crime to the defendant's credibility and the fact that the worthless check conviction was dissimilar to the crime in question, we do not believe the trial court abused its discretion in ruling the conviction was admissible for impeachment purposes.

Based on the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE