# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs May 4, 2004

## STATE OF TENNESSEE v. ROBERT L. STEVENSON

**Appeal from the Criminal Court for Shelby County**
**No. 02-07247     Chris Craft, Judge**

---

**No. W2003-02097-CCA-R3-CD  - Filed June 28, 2004**

---

A Shelby County Criminal Court jury convicted the defendant, Robert L. Stevenson, of burglary of a building, a Class D felony, and the trial court sentenced him as a career offender to twelve years in the Department of Correction.  The defendant appeals, claiming (1) that the evidence is insufficient to support his conviction and (2) that the trial court erred by allowing the state to impeach him with prior convictions.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

Brett B. Stein, Memphis, Tennessee, for the appellant, Robert L. Stevenson.

Paul G. Summers, Attorney General and Reporter; Michael Markham, Assistant Attorney General; William L. Gibbons, District Attorney General; Betsy Lynn Carnesale, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to the defendant's burglarizing a Memphis convenience store.  Officer Robert Lee Thompson of the Memphis Police Department testified that about 4:00 a.m. on March 25, 2002, he was dispatched to a burglary call at the Flash Market at 1672 East Holmes.  He said that when he arrived, he got out of his patrol car and walked toward the front of the store.  He said the defendant walked out of the store's front door and was carrying a crowbar in his right hand and a cash register drawer in his left hand.  He said he drew his gun and told the defendant to drop everything and lie on the ground.  He said that the defendant ran west, that he chased the defendant, and that the defendant suddenly stopped and threw the crowbar at him.  He said that the crowbar hit his left hand, that the defendant began running again, and that he chased the defendant behind the store.  He said that the defendant tried to climb over a fence, that he pulled the defendant off the

fence, and that they wrestled. He said that the defendant got away from him briefly but that other patrol cars arrived and blocked the defendant.

On cross-examination, Officer Thompson testified that he had been a block or two away from the store when he received the dispatch and that he arrived at the scene within a few seconds. He said he drew his gun when the defendant came out of the store and acknowledged that the defendant threw the crowbar at him despite his holding a gun. He said that after he pulled the defendant off the fence and the defendant got away from him, he tackled the defendant and other officers helped him subdue the defendant. He said that the defendant was injured at some point and that he believed the defendant was taken to a hospital.

Officer Michael Huff of the Memphis Police Department testified that he responded to a burglary call at 1672 East Holmes on March 25, 2002. He said that when he arrived, he heard Officer Thompson say over the police radio that Officer Thompson was pursuing on foot. He said that other officers arrived and surrounded the area and that he heard the defendant trying to jump over a fence. He said he went behind the store and saw the defendant running toward him. He said he and two other officers tackled the defendant and arrested him. He said that the defendant's head hit the ground when the officers tackled the defendant and that his head was bleeding. On cross-examination, Officer Huff acknowledged that the defendant was injured and that an ambulance was called to the scene. He said, though, that the defendant cursed the ambulance driver and paramedic and tried to refuse treatment. He said that the paramedic wrapped the defendant's head and that the defendant refused to go to the hospital. He said that after the paramedic treated the defendant, he took the defendant to the burglary bureau.

Abdullhai Sharif testified that his wife owned the Flash Market, that he managed the store, and that the store was open from 6:00 a.m. to midnight. He said that on March 25, 2002, he received a call from the store's alarm company at 4:00 a.m. and that the alarm company told him a burglar was in the store. He said that he went to the store and that the police were there. He said that the lock on the store's front door had been broken, that long distance telephone cards were all over the floor behind the counter, and that the cash register was on the floor. He said that the cash register's drawer was on the ground behind the store and that money was still in the drawer.

The defendant testified that he was fifty years old, had been married twenty-eight years, and had five sons. He said that on the morning of March 25, he went to LSI in order to get temporary work for the day. He said that he had to be at LSI by 5:00 a.m. in order to get on a list for temporary work and that he arrived at LSI about 4:30 a.m. He said that LSI was closed and that he decided to take a walk until the company opened. He said that the Flash Market was one block from LSI and that he walked between the convenience store and the store's gas pumps. He said that Officer Thompson's patrol car pulled into the parking lot behind him and that Officer Thompson told him to stop. He said Officer Thompson got out of the car and told him to put his hands in the air. He said he turned around, put his hands up, and saw that Officer Thompson was holding a gun. He said that the officer walked up to him and hit him on the top of the head and that he fell to his knees and lay on the ground. He said that the officer disappeared and that he stood up.

The defendant testified that he walked over to a fence near the store because LSI was on the other side. He said that Officer Huff arrived and told him to stop and lie down. He said that Officer Huff handcuffed him and that no struggle occurred. He said that his head was bleeding and that Officer Huff believed he needed to go to a hospital. He said that Officer Huff put him into the back of Officer Huff's patrol car and took him to "The Med," where he received twenty stitches in his head. He said he never heard a burglar alarm, never held a crowbar, and never threw a crowbar at a police officer. He said, though, that he cursed at the scene because Officer Thompson had hit him on the head. He said he did not rob the store but acknowledged pleading guilty on January 23, 2002, to two counts of burglary of a building and two counts of felony theft. On cross-examination, the defendant testified that he and another man had been waiting for LSI to open when he decided to take a walk but that he did not know the other man. Although the defendant had been charged with aggravated assault by causing bodily injury against Officer Thompson, aggravated assault by using or displaying a deadly weapon against Officer Thompson, and burglary, the trial court dismissed the charge of aggravated assault by causing bodily injury, and the jury found the defendant guilty only of burglary.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant claims that the evidence is insufficient to support his conviction because his testimony conflicted with Officer Thompson's and Officer Huff's testimony and because the jury acquitted him of aggravated assault by using or displaying a deadly weapon. The state claims that the evidence is sufficient. We agree with the state.

Our standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

Officer Thompson testified that when he arrived at the Flash Market on March 25, he saw the defendant walk out of the store carrying a crowbar and a cash register drawer. Although Officer Thompson drew his gun and ordered the defendant to stop, the defendant ran behind the store. Officer Huff testified that he arrived at the scene, went behind the store, saw the defendant running toward him, and that he and two other officers tackled and arrested the defendant. Mr. Sharif testified that while the store was closed on March 25, the store's alarm company telephoned him and told him that a burglar was in the store. He said he went to the store and saw that the store's door had been damaged. He also said that the store's cash register was on the floor and that the cash register drawer was behind the building. Although the defendant testified that he did not break into the store and merely was walking in the store's parking lot when Officer Thompson stopped him, the jury chose to believe the testimony of the state's witnesses over that of the defendant, which is

its prerogative.  State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).  We conclude that a rational jury could have found the defendant burglarized the Flash Market on March 25, 2002.

## II.  PRIOR CONVICTIONS

The defendant contends that the trial court erred by allowing the state to impeach him with prior theft and burglary convictions.  He argues that because his prior convictions were identical or similar to the crime in question, the prejudice of the prior convictions outweighed their probative value.  The state claims that the trial court noted the similarity between the current offense and the prior convictions and properly determined that the probative value of the prior convictions outweighed their prejudicial effect.  The state also claims that in any event, any error was harmless in light of the officers' testimony against the defendant.  We conclude that the trial court should not have allowed the state to impeach the defendant with the burglary convictions but that the evidence does not affirmatively appear to have affected the result of the trial.  See Tenn. R. Crim. P. 52(a).

Before trial, the state filed a notice of its intent to impeach the defendant with eleven prior misdemeanor and felony convictions that the defendant received from 1989 to 2002.  The trial court ruled that the state could impeach the defendant with the following four crimes for which he was convicted on January 23, 2002:  Theft of property valued more than sixty thousand dollars, theft of property valued more than one thousand dollars, and two convictions for burglary of a building.  The trial court recognized that two of the prior convictions were identical to the burglary of a building charge in this case and that two of the convictions were similar to the charge.  Nevertheless, the trial court held that the prior convictions were "so indicative of dishonesty that they should be allowed." The trial court also ruled that the probative value of the prior convictions outweighed their prejudicial effect.  In light of the trial court's ruling, the defense questioned the defendant about the four prior convictions during direct examination.  After direct examination, the trial court instructed the jury that it only could consider the prior convictions for determining the defendant's credibility and not "as evidence of his guilt of the offense for which he's now on trial."  During jury instructions, the trial court again told the jurors that they could consider the defendant's prior convictions "only for the purpose of its effect . . . on his credibility as a witness."

Pursuant to Rule 609, Tenn. R. Evid., the credibility of the defendant may be attacked by presenting evidence of prior convictions if certain conditions are met.  First, the state must give reasonable pretrial notice of the impeaching convictions.  Tenn. R. Evid. 609(a)(3).  Also, the convictions must be punishable by death or imprisonment over one year or must involve a crime of dishonesty or a false statement.  Tenn. R. Evid. 609(a)(2).  In addition, the impeaching conviction's probative value on credibility must outweigh its unfair prejudice.  Tenn. R. Evid. 609(a)(3).  In determining whether the probative value of a prior conviction on the issue of credibility outweighs its unfair prejudicial effect on the substantive issues, a trial court should consider the similarity between the crime in question and the underlying impeaching conviction, as well as the relevance of the impeaching conviction with respect to credibility.  State v. Farmer, 841 S.W.2d 837, 839 (Tenn. Crim. App. 1992).  The fact that a prior conviction involves the same or similar crime for which the defendant is being tried does not automatically require its exclusion.  State v. Baker, 956

-4-

S.W.2d 8, 15 (Tenn. Crim. App. 1997); State v. Miller, 737 S.W.2d 556, 560 (Tenn. Crim. App. 1987). However, if "the prior conviction and instant offense are similar in nature the possible prejudicial effect increases greatly and should be more carefully scrutinized." Long v. State, 607 S.W.2d 482, 486 (Tenn. Crim. App. 1980). A trial court's ruling under Rule 609 will not be reversed absent an abuse of discretion. Johnson v. State, 596 S.W.2d 97, 104 (Tenn. Crim. App. 1979).

This court has held that burglary and theft crimes are crimes of dishonesty and probative of credibility. Baker, 956 S.W.2d at 15. By denying involvement in the burglary, the defendant made his credibility an issue. The fact that the defendant had previous felony theft convictions would have substantial probative value regarding his credibility. Despite the similarity in the theft convictions and the crime in question relative to an intent to steal, we conclude that the trial court properly held that the theft convictions were admissible.

However, because the prior convictions for burglary of a building were identical to the offense in question, we believe they increased the risk of the jury's deciding that the defendant burglarized the convenience store in this case. Moreover, the jury's hearing that the defendant was convicted of the burglaries shortly before the present offense he was alleged to have committed created the strong risk of the jury's considering the prior burglary convictions as propensity evidence. See Tenn. R. Evid. 404(b) (providing that evidence of other crimes generally is inadmissible to prove a defendant's character). Given these particular circumstances and the existence of other felonies to use for impeachment, we conclude that the probative value of the prior burglary convictions did not outweigh the danger of their unfair prejudice. We hold, though, that in light of the evidence against the defendant and the trial court's instructions to the jury, allowing the jury to hear about the prior burglary convictions did not affect the verdict. Officer Thompson testified that he saw the defendant walk out of the store with a crowbar in one hand and a cash register drawer in the other. Officer Huff testified he responded to the burglary call, went behind the building, and saw the defendant running toward him. Mr. Sharif testified that the store's alarm company telephoned him in the early morning hours, that he went to the store, and that he saw the cash register drawer behind the building. The defendant claimed that he simply was walking through the store's parking lot when Officer Thompson stopped him for no reason, hit him on the head, and disappeared. Although the defendant claimed to have received twenty stitches at "The Med," Officer Huff testified that the defendant was treated at the scene and taken directly to the burglary bureau, and the defendant has presented no medical evidence to support his claim. We conclude that the trial court's allowing the jury to hear about his prior burglary convictions did not prejudice the defendant.

Based upon the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE