IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

MARCH 1999 SESSION



**FILED**

**August 3, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. # 02C01-9806-CR-00168 |
| Appellee, | * | SHELBY COUNTY |
| VS. | * | Hon. James C. Beasley, Jr., Judge |
| ALLISON TORRENCE, | * | (Theft Over $1,000.00 and |
| Appellant. | * | Burglary of a Motor Vehicle) |

For Appellant:

Tony N. Brayton
Assistant Public Defender
201 Poplar Avenue, Suite 2-01
Memphis, TN  38103

For Appellee:

John Knox Walkup
Attorney General and Reporter

Douglas D. Himes
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN  37243-0493

David Henry
Assistant District Attorney General
201 Poplar Avenue, Third Floor
Memphis, TN  38103

OPINION FILED:_____

AFFIRMED

GARY R. WADE, PRESIDING JUDGE

## OPINION

The defendant, Allison Torrence, was convicted of theft over $1000.00 and burglary of a motor vehicle. The trial court imposed Range III, consecutive sentences of twelve years for the theft and six years for the burglary conviction. In this appeal of right, two issues are presented for review:

(I) whether the trial court erred by allowing the defendant's previous convictions to be used for impeachment purposes; and

(II) whether the trial court erred by imposing consecutive sentences.

We affirm the judgment of the trial court.

During the early morning hours of September 2, 1997, Memphis patrolman Bill Greenwood saw the defendant pulling a wheeled garbage can along the street. Because the activity was "pretty unusual" at between 4:00 and 5:00 A.M., Officer Greenwood stopped the defendant and asked to look inside the garbage can. After receiving the defendant's consent, Officer Greenwood discovered a television, VCR and stereo equipment concealed under a small plastic bag and a few aluminum cans. When the officer conducted a weapons search of the defendant, he found a new Mitsubishi cellular telephone.

Initially, the defendant told Officer Greenwood and other officers who had arrived on the scene that he had obtained the equipment from a pawn shop. He explained that the cellular telephone belonged to a friend. The defendant produced a pawn ticket which was illegible. He could not identify the owner of the telephone and was unable to read the number. When Officer Greenwood dialed the memory number one on the cellular phone, he awakened Gregory Koziel who said

2

that his wife owned a Mitsubishi cellular telephone that had been left in their van. The officer waited while the Koziels checked the van. After returning to the phone, they reported that the vehicle had been burglarized and badly damaged when the television, VCR, and stereo had been ripped out.

When the officers transported the defendant to the Koziel residence, Mr. Koziel identified the stolen items and confirmed that the defendant did not have permission to remove those items from the van. At trial, he testified that the value of the stolen property was approximately $1,500.00.

I

The defendant first asserts that the trial court erred by allowing the state to introduce his prior convictions for purposes of impeachment. See Tenn. R. Evid. 609. We find no reversible error.

Before trial, the district attorney filed a notice to utilize the convictions for impeachment purposes under Rule 609(a)(3) of the Tennessee Rules of Evidence. The notice included seven prior offenses:

> (1) receiving and concealing stolen property (November 18, 1985);
>
> (2) receiving and concealing stolen property (November 18, 1985);
>
> (3) unlawful possession of a controlled substance with intent to sell/deliver[1] (July 3, 1991);
>
> (4) burglary (September 5, 1991);
>
> (5) theft of property (November 17, 1992);
>
> (6) theft of property (July 1, 1994); and

---

[1]At the pretrial hearing, the defendant challenged the admissibility of the drug conviction; however, it has not been challenged on appeal.

(7)  burglary of a motor vehicle (December 16, 1994).

In response, the defendant requested a pretrial hearing in an effort to suppress the prior convictions.  See State v. Morgan, 541 S.W.2d 385 (Tenn. 1976).  The defendant argued that the two 1985 convictions were inadmissible under Tenn. R. Evid. 609(b) because they were more than ten years old.  He also contended that the burglary and theft convictions were inadmissible because they were too similar to the offenses charged.  The trial court ruled that all of the convictions could be used by the state for impeachment purposes:

> [B]ased on the nature of the crimes charged, it appears ... all of them are crimes involving dishonesty. ...  I don't find that the 1985 convictions are so far removed outside ... of the rules, ...that they should be excluded ... because of the fact that they do deal with property crimes, crimes involving dishonesty.  And there seems to be definitely a pattern of those types of offenses. ...  And I think in weighing whether or not to allow that in versus the prejudicial effect, I believe that the State would be prejudiced by not being allowed to prove [the] specific nature of crimes involving dishonesty[,] that it would be appropriate to allow all of these convictions in with the appropriate charge to the jury, that they are not to consider them for anything other than to determine the credibility of Mr. Torrence should he decide to testify.

The defendant elected not to testify but made an offer of proof in which he asserted he would have testified that he had found the stolen property in the garbage can.  He contended that he was collecting aluminum cans when he discovered the items and had no idea they had been stolen.  He stated that he explained these circumstances to Officer Greenwood and denied having claimed he purchased the items at a pawn shop.  The defendant also denied any involvement in the burglary of Koziels' van.

Rule 609 of the Tennessee Rules of Evidence specifically provides as follows:

4

(a) General Rule.  For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime may be admitted if the following procedures and conditions are satisfied:

* * *

(2) The crime must be punishable by death or imprisonment in excess of one year under the law under which the witness was convicted or, if not so punishable, the crime must have involved dishonesty or false statement.

(3) If the witness to be impeached is the accused in a criminal prosecution, the State must give the accused reasonable written notice of the impeaching conviction before trial, and the court upon request must determine that the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues.  The court may rule on the admissibility of such proof prior to the trial but in any event shall rule prior to the testimony of the accused.  If the court makes a final determination that such proof is admissible for impeachment purposes, the accused need not actually testify at the trial to later challenge the propriety of the determination.

(b)  Time limit.--Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed between the date of release from confinement and commencement of the action or prosecution; if the witness was not confined, the ten-year period is measured from the date of conviction rather than release.  Evidence of a conviction not qualifying under the preceding sentence is admissible if the proponent gives to the adverse party sufficient advance notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence and the court determines in the interests of justice that the probative value of the conviction, supported by specific facts and circumstances, substantially outweighs its prejudicial effect.

See also State v. Farmer, 841 S.W.2d 837, 839 (Tenn. Crim. App. 1992).

In determining whether the probative value of a prior conviction on the issue of credibility is outweighed by its prejudicial effect on the substantive issues, a trial court should "(a) 'assess the similarity between the crime on trial and the crime underlying the impeaching conviction,' and (b) 'analyze the relevance the

5

impeaching conviction has to the issue of credibility.'" Farmer, 841 S.W.2d at 839 (quoting N. Cohen, D. Paine, and S. Sheppeard, Tennessee Law of Evidence § 609.9, at 288 (2d ed. 1990)). In State v. Abraham Galmore, _____ S.W.2d _____, No. 02S01-9804-CR-000333, slip op. at 10 (Tenn., at Jackson, May 10, 1999), the supreme court ruled that an offer of proof is not necessary to preserve the issue for appeal.

The defendant contends that the 1985 receiving and concealing convictions are too stale to be relevant. Because the trial court determined that the offenses, both of which involved dishonesty, established a pattern of criminal conduct, it allowed each to be used by the state for impeachment purposes.

The probative value of ten-year plus convictions may substantially outweigh any prejudicial effect where the defendant's record shows "a continuing course of conduct which was probative of ... credibility." State v. Johnson, 596 S.W.2d 97, 104 (Tenn. Crim. App. 1979). Here, the other four convictions, each of which involved dishonesty, were less than ten years old. Taken together, the six offenses, ranging from 1985 to 1994, established a continuing course of criminal dishonesty. Yet the rule requires that the "probative value of the conviction, supported by specific facts and circumstances, substantially outweigh[] its prejudicial effect." Tenn. R. Evid. 609(b) (emphasis added).

While giving some deference to the ruling of the trial judge, it is our view that the controlling test was not met. The prejudicial effect of similar crimes is substantial. A series of criminal acts, regardless of their nature, suggests a propensity to commit other crimes. A "substantial outweighing" of the probative value requires, of course, a higher standard of assurance by the state before

6

admission. The record here simply does not contain specific "facts and circumstances" which would support the admission of the two twelve-year-old convictions under the exception to Rule 609(b). Id. In our assessment, the trial court erred by admitting the 1985 convictions but the error was harmless in that it had no effect on the results of the trial. See Tenn. R. App. P. 36(b).

The defendant also challenges the admissibility of his 1991 through 1994 burglary and theft convictions. He contends that the similarity between those convictions and charges in this case causes a prejudice that outweighs the probative value of the prior convictions. The state, of course, disagrees.

While the prior convictions for burglary were similar to the charges for which the defendant was tried, that does not, as a matter of law, render evidence of the prior offenses inadmissible. See State v. Gibson, 701 S.W.2d 627, 628-29 (Tenn. Crim. App. 1985) (prior drug convictions admissible in prosecution for possession of drugs); State v. Goad, 692 S.W.2d 32, 37 (Tenn. Crim. App. 1985) (prior conviction for armed robbery admissible in prosecution for murder first degree and armed robbery); and Johnson, 596 S.W.2d at 104 (prior conviction for burglary admissible in prosecution for burglary). Prior crimes involving dishonesty bear greatly upon credibility. If the defendant had testified, the trial would have amounted to a swearing match between him and Officer Greenwood. The defendant's credibility as a witness would have been critical to the jury's determination. Thus his prior offenses had significant probative value for the state. In our view, the trial court did not err by admitting the 1991 through 1994 convictions for impeachment purposes.

The defendant insists, however, that the prejudicial effect of the prior

7

convictions could have been minimized if the state had referred to the convictions in a "generic" fashion, rather than specifically identifying the nature of the crimes. In Galmore, however, our supreme court ruled that "proper application of the balancing test under Tenn. R. Evid. 609(a)(3) requires identification of the prior conviction." Slip op. at 5. Our high court noted that not "identifying the felony ... would permit a jury to speculate as to the nature of the prior conviction" and would hinder the jury's ability to "properly weigh the conviction's probative value as impeaching evidence." Id.

In summary, the trial court erred by admitting the 1985 convictions but did not err by admitting the several other convictions for crimes involving dishonesty. In our view, the admission of the 1985 offenses was harmless error. See Tenn. R. App. P. 36(b) (Relief shall not be granted "unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process.") First, the state had a strong case against the defendant. Officer Greenwood essentially caught the defendant "red-handed." Secondly, it is unlikely the jury would have accredited the defendant's proffered testimony due to the four other convictions that were admissible for impeachment purposes.

II

Next the defendant contends that the trial court erred by the imposition of consecutive sentences. When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing

8

principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

Prior to the enactment of the Criminal Sentencing Reform Act of 1989, the limited classifications for the imposition of consecutive sentences were set out in Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976). In that case, our supreme court ruled that aggravating circumstances must be present before placement in any one of the classifications. Later, in State v. Taylor, 739 S.W.2d 227 (Tenn. 1987), the court established an additional category for those defendants convicted of two or more statutory offenses involving sexual abuse of minors. There were, however, additional words of caution:

> [C]onsecutive sentences should not be routinely imposed
> . . . and . . . the aggregate maximum of consecutive
> terms must be reasonably related to the severity of the
> offenses involved.

Taylor, 739 S.W.2d at 230. The Sentencing Commission Comments adopted the cautionary language. Tenn. Code Ann. § 40-35-115. The 1989 Act is, in essence, the codification of the holdings in Gray and Taylor; consecutive sentences may be imposed in the discretion of the trial court upon a determination that one or more of

the following criteria[2] exist:

> (1)  The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;
>
> (2)  The defendant is an offender whose record of criminal activity is extensive;
>
> (3)  The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
>
> (4)  The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
>
> (5)  The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;
>
> (6)  The defendant is sentenced for an offense committed while on probation; or
>
> (7)  The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).

In State v. Wilkerson, 905 S.W.2d 933 (Tenn. 1995), our supreme court ruled that consecutive sentences cannot be required for any of the classifications "unless the terms reasonably relate to the severity of the offenses committed and are necessary in order to protect the public from further serious criminal conduct by the defendant." Id. at 938.  The Wilkerson decision, which

---

[2]The first four criteria are found in Gray.  A fifth category in Gray, based on a specific number of prior felony convictions, may enhance the sentence range but is no longer a listed criterion.  See Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments.

modified guidelines adopted in State v. Woods, 814 S.W.2d 378, 380 (Tenn. Crim. App. 1991), governing the sentencing of dangerous offenders, described sentencing as "a human process that neither can nor should be reduced to a set of fixed and mechanical rules." Wilkerson, 905 S.W.2d at 938 (footnote omitted).

At the sentencing hearing on April 9, 1998, the trial court found that the defendant "ha[s] a history of being a criminal who has made his livelihood, what livelihood there is, from committing crimes." The trial court imposed consecutive sentencing based on its findings that the defendant met two of the statutory criteria: he is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood and he is an offender with an extensive record of criminal activity. See Tenn. Code Ann. § 40-35-115(b)(1), (2). These findings by the trial judge are supported by defendant's numerous past convictions for theft and burglary, his poor work history, and his admission that he engaged in theft to support his drug habit.

In State v. Desirey, 909 S.W.2d 20 (Tenn. Crim. App. 1995), this court ruled as follows:

> [Trial courts should] ensure that the aggregate sentence imposed should be the least severe measure necessary to protect the public from the defendant's future criminal conduct and should bear some relationship to defendant's potential for rehabilitation.

Id. at 33.

The defendant contends that his situation is analogous to that of the defendant in Desirey. Desirey was convicted of four counts of bribing a public servant and was sentenced to four consecutive four-year, six-month sentences. Id. at 34. On appeal, this court modified the sentences so that three of the terms were

11

concurrent, resulting in an aggregate nine-year sentence. Id. at 34. The author reasoned that four consecutive sentences were inappropriate because the defendant had been convicted of non-violent offenses which "consisted of a short series of similar, related conduct of an ongoing nature." Id. at 34. The court commented that "offenses which overlap with the same intent can make concurrent sentencing appropriate." Id. at 34 (citing State v. Holt, 691 S.W.2d 520, 522 (Tenn. 1984)).

Although the defendant, like Desirey, did commit non-violent offenses which consisted of an ongoing series of related conduct, there is a significant difference between this defendant and Desirey. The proof established that Desirey possessed significant potential for rehabilitation. This defendant, on the other hand, has continued to violate the law despite a number of opportunities at probation and parole. His prior incarceration has been for relatively short periods of time. There is little in this record to suggest that the defendant is prepared to change his course of conduct. Considering the defendant's extensive criminal record, his history of supporting himself through crime, and his past unwillingness to comply with probation and parole, an aggregate eighteen-year sentence bears a reasonable relationship to the seriousness of the crimes and is necessary to protect the public from future criminal acts by the defendant. See Wilkerson, 905 S.W.2d at 938.

Accordingly, the judgment of the trial court is affirmed.

_____
Gary R. Wade, Presiding Judge

12

CONCUR:

_____
Joseph M. Tipton, Judge


_____
Thomas T. Woodall, Judge