# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs January 5, 2011

## STATE OF TENNESSEE v. JEFFREY GAYLON DOUGLAS

**Direct Appeal from the Circuit Court for Madison County**
**No. 09-624      Donald H. Allen, Judge**

**No. W2010-00986-CCA-R3-CD   -   Filed March 16, 2011**

The defendant, Jeffrey Gaylon Douglas, was convicted by a Madison County Circuit Court jury of rape, a Class B felony, and sexual battery, a Class E felony, and sentenced to concurrent terms of ten and two years, respectively. On appeal, he challenges the sufficiency of the convicting evidence. After review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which J.C. MCLIN and CAMILLE R. MCMULLEN, JJ., joined.

Gregory D. Gookin, Assistant Public Defender, for the appellant, Jeffrey Gaylon Douglas.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Senior Counsel; James G. Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

### State's Proof

The thirteen-year-old victim, F.S.,[1] testified that on April 15, 2009, she obtained permission from her mother and went to a house a few doors away to play with her friends, Tyler and Justin Robbins, who were twelve or thirteen and fifteen years old, respectively. One of the victim's brothers, Ricky, was going to accompany her, but he had to attend to

---

[1] It is the policy of this court to refer to minor victims of sexual assault by their initials only.

some chores. The defendant was the victim's friends' stepfather and "Ms. Tina," Tina Douglas, was their mother. After watching some movies and horse playing, the victim spent the night at her friends' house, which was something she had done before. The victim slept on a pallet on the floor in Tina Douglas' room, where Douglas and her nineteen-year-old daughter, Leann Roberson, slept in the bed.

The victim went to bed around 9:15 p.m., after Douglas and Roberson had already gone to bed. On the morning of April 16, the victim was awakened by "a strange feeling that something was touching [her] butt and [her] private." The victim saw that the defendant was touching her; however, being in a half-asleep state, she did not think much of it and went back to sleep. She did not know if her vagina was penetrated at that point. Sometime later, the victim was awakened again to find the defendant touching her buttocks and private area. The defendant was touching the victim's genital area under her clothes, penetrating her vagina with his hand or finger and "rubbing it."

The victim yelled for the defendant to stop and yelled for Tina Douglas, but Douglas did not wake up. The defendant ran out of the room, and the victim grabbed her belongings and ran, crying, to her house without bothering to put on her shoes. The victim arrived home and reported to her mother and her mother's fiancé, Ralph Turner, what the defendant had done to her. The victim said that she in no way consented to the defendant touching her, and she found the touching to be painful.

The victim testified that she had spent the night at the defendant's house in the past and that the defendant usually woke her up by yelling her name and "push[ing] [her] shoulder." She said, however, that "this time . . . was different." The victim acknowledged that she and the defendant had not been on good terms since the defendant testified against the victim's brother, Stephan, in a juvenile court proceeding. The victim said that the defendant confronted her the evening of the incident as to why the victim was mad at him, and she had responded that she was mad because of what he had done to her brother. The victim said that she had spent the night at the defendant's house several times since he had testified against her brother, but the night of the incident was the first time she had done so without one of her brothers.

Ralph Turner, the victim's mother's boyfriend at the time of the incident, testified that around 6:15 the morning of April 16, 2009, the victim arrived home, "[c]rying, borderline hysterical, upset," and told him what had happened at the defendant's house. In response, Turner went to the defendant's house and confronted him about the incident. The defendant claimed that he had just been pushing on the victim to wake her up, and he apologized if anything happened that made her feel bad or scared. Turner returned home, and he and the victim's mother called the police. The police arrived and took a report, and the victim was

taken to see a doctor.

Dr. Lisa Piercey, accepted as an expert in child abuse pediatrics, testified that she examined the victim and learned of the victim's medical history, including the reported genital trauma. In her physical examination of the victim, Dr. Piercey did not find any signs of trauma to the genitals. However, Dr. Piercey said that it was not unusual to see no signs of trauma because, among other reasons, digital penetration often causes no perceptible injury.

**Defendant's Proof**

Tina Douglas, the defendant's estranged wife, testified that, at the time of the incident, she and her husband were having marital problems and she was sharing a bedroom with her daughter. Douglas said that on the night of the incident, she and the victim went to bed at the same time, around 10:00 p.m., and her daughter, Leann, was still at work when they went to bed. She awakened between 5:00 and 5:15 a.m. to get ready for work and did not see anything out of the ordinary that morning or hear anyone shouting or screaming. She left the house "a little after 6[:00 a.m.]," and the defendant was awake in his room. When she left, the victim was on the floor in her and her daughter's room still asleep. Douglas said that the defendant called her at work around 7:15 a.m. to inform her of the victim's allegations.

Janice Leann Roberson testified that she and her mother were sharing a bedroom at the time of the incident. When she got home from work around 2:00 a.m., the victim was asleep on the floor in her mother's bedroom within "an arm's reach" of Roberson. Roberson said that her alarm sounded at 7:00 a.m. and the victim was no longer there. She was not aware of when the victim left and did not hear the victim gathering her belongings. About five minutes after she woke up, Roberson learned about the victim's allegations against the defendant. Roberson described herself as "an extremely light sleeper" and said that she did not hear any yelling or commotion that morning. However, Roberson admitted that she did not hear her mother or the victim get up that morning.

The defendant testified that he did not discover that the victim had spent the night at his house until he saw her in Douglas' bedroom the next morning. Douglas was getting ready to leave for work at the time, and the defendant went around waking up all the kids so they could get ready for school. He first called out to the victim to wake up, then left the room to call the other children. Shortly thereafter, he returned to the victim and "touched her enough to make her realize that somebody was talking to her." He said that he did not touch the victim in an inappropriate manner. The defendant recalled that as he was preparing to leave the house, Ralph Turner showed up accusing him of touching the victim inappropriately. The defendant said that he told Turner, "'I'm sorry, I don't know what

you're talking about.'" The defendant acknowledged that he testified in a matter involving the victim's brother, Stephan, in juvenile court in 2008. He said that the victim's family "started drifting from [him]" thereafter and accused him of having lied in Stephan's case. On cross-examination, the defendant clarified that when he touched the victim to wake her up, he touched her in the area of either her stomach, shoulder, or back.

John Essary testified that he had known the defendant for seventeen years and was of the opinion that he was a truthful and honest person. On cross-examination, Essary admitted that he was not at the defendant's home the night of April 15 or morning of April 16, 2009.

After the conclusion of the proof, the jury convicted the defendant, as indicted, of rape and sexual battery.

## ANALYSIS

On appeal, the defendant challenges the sufficiency of the convicting evidence. He asserts that the victim's testimony was called into question by the testimony of Tina Douglas and Leann Roberson. He also argues that there was no testimony of force or coercion to sustain the rape conviction as charged in the indictment.

In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human

> atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Rape is defined as "unlawful sexual penetration of a victim by the defendant" accomplished with "[f]orce or coercion," or "without the consent of the victim and the defendant knows or has reason to know at the time of penetration that the victim did not consent," or when the defendant "knows or has reason to know that the victim is . . . physically helpless[.]" Tenn. Code Ann. § 39-13-503(a)(1), (2), (3) (2006). "Sexual penetration" includes "any . . . intrusion, however slight, of any part of a person's body or of any object into the genital . . . opening[] of the victim's . . . body . . . ." Id. § 39-13-501(7).

"Sexual battery" is defined as "unlawful sexual contact with a victim by the defendant" accomplished with "[f]orce or coercion," or "without the consent of the victim and the defendant knows or has reason to know at the time of the contact that the victim did not consent," or when the defendant "knows or has reason to know that the victim is . . . physically helpless[.]" Id. 39-13-505(a)(1), (2), (3). "'Sexual contact' includes the intentional touching of the victim's . . . intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's . . . intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." Id. § 39-13-501(6).

In the light most favorable to the State, the evidence shows that the defendant approached the victim while she was sleeping and touched her buttocks and genital area. The defendant returned to the sleeping victim a short while later and touched her buttocks and genital area under her clothes, penetrating her vagina with his hand or finger and "rubbing it." The victim said that she did not consent to any of the defendant's touchings and that she found them to be painful. This evidence was sufficient for a rational trier of fact to find the defendant guilty of rape and sexual battery. The defendant challenges the credibility of the victim's testimony in light of the testimony from Tina Douglas and Leann Roberson that they did not hear any screaming or yelling from the victim as she had testified. However, all of the testimony was heard and assessed by the jury as the trier of fact, and we will not disturb its determination.

As another matter, the defendant argues that the evidence of rape was insufficient in that the indictment charged rape by "force or coercion" and there was no evidence of force or coercion. It appears that the defendant's argument, albeit in different terms, is that there was a variance between the allegations in the indictment and the proof at trial.

A variance arises when the proof presented at trial departs from the allegations in the indictment. State v. Keel, 882 S.W.2d 410, 416 (Tenn. Crim. App. 1994). Before a variance will be deemed fatal to a prosecution, it must be both material and prejudicial. State v. Moss, 662 S.W.2d 590, 592 (Tenn. 1984). In general, a variance between an indictment and the proof at trial

> is not fatal if (1) the defendant is sufficiently informed of the charges levied against him so that he can adequately prepare for trial and, (2) the defendant is protected against a subsequent prosecution for the same offense based on double jeopardy grounds. The variance is not to be regarded as material when the indictment and proof substantially correspond. A material variance occurs only if the prosecutor has attempted to rely at the trial upon theories and evidence that were not fairly embraced in the allegations made in the indictment.

State v. Mayes, 854 S.W.2d 638, 640 (Tenn. 1993) (citations omitted). As long as the defendant is not misled at trial, any variance is not considered to be a basis for reversal. Johnson v. State, 596 S.W.2d 97, 103 (Tenn. Crim. App. 1979).

Upon review, we conclude that any variance between what was charged in the indictment and the proof at trial was not prejudicial in this case. The indictment cited the applicable code section, which included the optional circumstances supporting rape. The defendant makes no allegation that he was surprised by the proof at trial. At trial, the defendant denied that he ever penetrated or touched the victim inappropriately. He in no way tailored his defense to respond to the circumstances of force or coercion and was thereby prejudiced by the State presenting evidence supporting other circumstances proving the rape charge. Moreover, the variance in this case does not put the defendant in jeopardy of being prosecuted a second time for the same offense. Therefore, the variance in this case is not fatal and the evidence sufficiently establishes the offense of rape.

## CONCLUSION

Based on the foregoing authorities and reasoning, we conclude that any variance in the indictment and proof at trial was not prejudicial and that the evidence was sufficient to

sustain the defendant's convictions.

                                              _____

ALAN E. GLENN, JUDGE